MADISON LUMBER CO. v. CRANE SERVICE CO., INC., ET AL.

___

(April 21, 1930. Opinion and Decree.)
(May 5, 1930. Rehearing Granted.)
(June 16, 1930. Opinion and Decree on Rehearing.)

___

Deutsch & Kerrigan and Bert Flanders, Jr., of New Orleans, attorneys for plaintiff, appellee.

P. M. Milner, of New Orleans, attorney for defendants, appellants.

JANVIER, J. This is a suit against the surety on the bond of a general public contractor for the price of certain lumber sold to a subcontractor and not paid for.

The subcontractor, Crane Service Company, Inc., is also sued but so far as it is concerned there is no defense, and the sole question for our determination is whether the surety, on the bond of the general contractor, is liable for lumber bought by the subcontractor for use in preparing a foundation for a pile driver to be used over water, and for use in making repairs to the pile driver.

The work in question was the construction of the bridge over the New Basin Canal at South Claiborne avenue, and, under the subcontract, the Crane Service Company, Inc., subcontractor, undertook to construct the coffer dam in the middle of the canal. This construction work required the use of a pile driver and in order to place the pile driver over the water, the Crane Company purchased certain piling and heavy timbers to be used in the construction of a temporary foundation on which the pile driver might rest.

During the operation of the work certain minor repairs were made necessary to the pile driver, and, for the purpose of making these repairs, the other items totalling $25.78 were purchased.

The surety company contends that it is liable neither for the piling and timber purchased for the foundation nor for the lumber purchased for repairing the pile driver, because neither of these items is such as is contemplated by the language of Act 271 of 1926.

That act, in amending section 1 of Act 224 of 1918, provides that the surety shall be liable "for the payment * * * by all subcontractors for all material or supplies furnished for use in machines used in the construction * * *" and also provides that the surety shall be liable for all material used in the work itself.

The surety contends that it is not liable for the piling and large timbers used in constructing the foundation for the pile driver because these were made necessary only by the inherent unfitness of the pile driver to do the particular kind of work which was necessary.

In the subcontract there was no stipulation as to the particular kind of pile driver to be used. The work was to be done on water and the general contractor may have assumed, as he had a right to do, that the subcontractor undertaking such work was possessed of suitable machinery and equipment for carrying out such a contract in the most economical manner. Had the Crane Company had available a floating pile driver, the purchases of piling and large timbers would not have been necessary as these were only required because of the desire of the subcontractor to use a land pile driver to do marine work.

After the work was completed, the piling and timbers were removed and thereafter

remained in the possession of the Crane Company and formed no part of the "work" itself. These items remained practically as good as when first bought and could have been used by the Crane Company for future work of a similar nature.

We are of the opinion that such items really were for the purpose of changing the nature of the machine, and that the surety on the bond of the general contractor. is no more liable for the unpaid purchase price of such timbers and piling than it would be for the purchase price of an entire pile driver if the subcontractor found it necessary to buy one.

As to the lumber sold for the repairs, we believe that, under the interpretation placed on the act of 1926 by the Supreme Court in Red River Construction Co. v. Pierce Petroleum Corporation, 165 La. 565, 115 So. 752, and under the interpretation given by the Court of Appeal for the First Circuit in Pipes v. Irvine and Union Indemnity Company, 7 La. App. 215, these items should be considered as material or supplies used in the machine.

It is very true that in the two cases to which we have referred the act of 1926 was not involved and it is equally true that the courts held that the items sued for, such as automobile tires, batteries, gasoline, oil, etc., could not be recovered under the prior acts, but in both cases the court distinctly held that if the act of 1926 had been involved such articles would have been within the protection of the bond of the general contractor. We construe this to mean that where the subcontractor furnishes equipment which is capable of doing the work, such wear and tear as may thereafter be sustained, may be replaced and the replacement parts, materials, and supplies will be within the protection of the bond of the general contractor.

We readily agree that if materials or supplies are made necessary to change the nature of a machine so as to make it fit for one kind of work when it was originally intended for another, then the surety on the bond of the general contractor is not liable, but we cannot say that such is the situation which is presented here, so far as the items we are now considering are concerned.

We have before us no evidence as to when the repair items were purchased, and, from the briefs, ascertain only that it was stipulated that this lumber was used to repair the machine. We gather from this fact that when the work was commenced the machine was in good order and that the repairs referred to were made necessary by normal wear and tear resulting from the use and operation of the machine in question.

It is therefore ordered, adjudged, and decreed, that the judgment appealed from be, and it is, amended by reducing the amount thereof to $28.78, with interest at 5 per cent per annum from December 1, 1927, until paid; costs of the trial court to be paid by defendant and appellant, and costs of this court to be paid by plaintiff and appellee.

## ON REHEARING

JANVIER, J. The only question now before us is whether the surety on the bond of a general contractor engaged in carrying out a contract for public work is liable to a furnisher of lumber sold to a subcontractor to be used in the repair of a pile driver belonging to and used by the subcontractor, where the repairs were made necessary not by ordinary wear and tear, but by the negligent operation of the pile driver.

In our original opinion we said that un-

der the authorities therein cited such material as was required to make repairs made necessary by ordinary use of the pile driver, if not paid for by the subcontractor, might form the basis of a suit against the surety of the general contractor. Since we were then of the opinion that the items which we are now considering had been purchased to make such repairs, we held that the surety of the general contractor was liable therefor.

Our attention has, however, been called to the fact that the repairs made were not necessitated by ordinary use, or by wear and tear, but were required because of the fact that the pile driver, through carelessness of the employes of the subcontractor, was allowed to turn over, with the result that it sustained the damage which the lumber was used to repair.

If the surety of the general contractor is liable for such purchases, it might be liable for the purchase of an entire pile driver or for the purchase of any other equipment damaged or destroyed by the negligence of the subcontractor or his employes. Such a result was certainly never contemplated by the framers of Act 271 of 1926.

A subcontractor who undertakes work must furnish his own tools and equipment and, under that act, the liability of the surety of the general contractor is limited to materials and supplies used in the work or used in the machines and equipment. We cannot extend the meaning of that act so as to include within its provisions purchases made for the replacement of parts damaged or destroyed by negligence.

Our original decree is, therefore, recalled, and it is now ordered, adjudged and decreed that the judgment of the First City Court of New Orleans be and it is annulled, avoided and reversed, and that there now be judgment in favor of Fidelity & Deposit Company of Maryland, dismissing plaintiff's suit insofar as it applies to the said defendant, at the cost of plaintiff.