No. 24,757.

GEORGE R. BASSETT, Trustee, *Appellee*, v. DELLA M. CARPENTER and A. H. CARPENTER, *Appellants*.

### SYLLABUS BY THE COURT.

MECHANIC'S LIEN—*Contract with Landowner to Drill Oil Well—Balance Due Contractor—Contractor Not Entitled to Mechanic's Lien on the Land.* A driller entered into a contract with the owner of land to drill a well in search for oil or gas in wild-cat territory, the contractor to furnish the rig, casing, labor and all material and machinery necessary for the purpose and to pay all bills for labor and material incurred in the test, saving the landowner harmless from any mechanic's lien by reason of such bills. The amount to be paid by the landowner for the drilling was stipulated, and it was provided that the contractor should have a certain interest in the well if oil or gas was found, if not found no interest was to be acquired and the contractor was to plug the well. The rig, casing and other equipment remained the property of the contractor, which he was at liberty to remove when the project was abandoned. The drilling resulted in a dry hole and the contractor claimed a lien on the farm of the landowner for an unpaid balance due for the drilling. *Held*, That the contractor was not entitled to a lien under the mechanic's lien statute.

Appeal from Sedgwick district court, division No. 1; THOMAS E. ELCOCK, judge. Opinion filed December 8, 1923. Reversed.

*C. H. Brooks, Willard Brooks*, and *Howard T. Fleeson*, all of Wichita, for the appellants.

*R. L. Holmes, C. G. Yankey, W. E. Holmes, D. W. Eaton*, and *John L. Gleason*, all of Wichita, for the appellee.

Bassett, *Trustee*, v. Carpenter.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an appeal from a decision on a demurrer holding that a petition setting up a contract between E. H. Morgan, a drilling contractor, and the owner of land, to drill a well which turned out to be a dry hole, stated a cause of action, and that the former was entitled to a mechanic's lien upon the land for the drilling of the well.

It appears that Morgan was adjudged a bankrupt and the action was brought by George R. Bassett, who was appointed a trustee for the bankrupt estate. The contract provided that Morgan should furnish the rig, casing, labor and necessary machinery for drilling the well, pay all bills for material and labor, and save the landowner harmless from any mechanic's liens by reason of such bills. He was to drill the well to a depth of three thousand feet for $37,500, unless oil was found at a lesser depth at a rate which was not in dispute. The contract was subsequently modified to provide for the drilling of the well to a greater depth, at a fixed rate, and it was stipulated that if oil or gas was found Morgan was to receive as additional compensation a one-tenth interest in the venture, but if it turned out to be a dry hole he was to receive no interest in the property or assets, but was required to plug the well in the manner prescribed by law. The contract contained a provision that if oil or gas was found in paying quantities the landowner had the right to purchase the rig, casing and other equipment at prices that were stated. It was alleged that certain payments were made by the landowner for the cost of the drilling, but when no oil or gas was found and the well was abandoned, there was $12,450 remaining unpaid, and plaintiff asked that this indebtedness be adjudged a lien on the land, under the general mechanic's lien statute. The well was drilled in what was called "wild-cat territory" and the plaintiff, in his petition as well as in his statement for a lien, recited that the contract provided for the drilling of a test well, but it was not so designated in the contracts that were made.

The defendant contends that this was an exploratory operation and was in no sense an improvement of the premises. The casing and equipment were furnished and owned by the driller and were not to be a permanent part of the land unless they were purchased from him by the landowner. Throughout the operation he owned these appliances and had the right to take them away and plug

the hole in case no oil was found. When the exploration disclosed no oil or gas, all traces of the operation were removed ·from the land as the contract provided. He insists there was no structure, no permanent improvement nor anything that enhanced the value of the land. It is said that it is no more than a mere geological survey and that nothing was added to the land to which a mechanic's lien could attach.

On behalf of the plaintiff it is insisted that this is not a mere exploration nor can it be regarded as a test well. He insists that while it was drilled in unproved or wild-cat territory, it was contracted for by the landowner with the intention and in the hope of finding oil or gas, which if found would add much to the value of the land, otherwise he would not have expended so large a sum of money for its development. He urges that the fact that his hopes were not realized and that the venture proved to be a failure instead of a success, did not deprive the contractor of a lien for the labor and material expended in drilling the well. Although the legislature has enacted a statute providing for liens for those who furnish work and labor in drilling, completing, operating or repairing of oil or gas wells (Gen. Stat. 1915, § 4996), no claim is made under that act. The reason the act was deemed to be unavailable was that it limits the lien to a contract with the owner of a leasehold interest while the one sought is against the owner of the freehold. Before the act mentioned was passed, it was held that a lease to explore for oil and gas did not give the lessee any estate in the land or authorize him to create an ordinary mechanic's lien on the land notwithstanding oil or gas should be discovered. (*Oil Co. v. McEvoy,* 75 Kan. 515, 89 Pac. 1048; *Phillips v. Oil Co.,* 76 Kan. 783, 92 Pac. 1119). Shortly after these decisions were announced the statute of 1909, providing for liens for labor and material furnished to owners of leaseholds for oil and gas purposes, was enacted. A lien as claimed by plaintiff under the ordinary mechanic's lien statute which so much as is necessary to quote provides:

"Any person who shall under a contract with the owner of any tract, or piece of land, or with a trustee, agent, husband or wife of such owner, . . . furnish material for the erection, alteration or repair of any building, improvement or structure thereon, or who shall furnish material or perform labor, . . . in putting up of any fixtures or machinery in or attachment to any such building, structure or improvement, . . . shall have a lien upon the whole of said piece or tract of land, the building and appurtenances, in the manner herein provided," etc. (Laws 1919, ch. 235, sec. 1.)

Bassett, *Trustee*, v. Carpenter.

Under this statute material furnished and labor performed by any person in the erection, alteration or repair of a building, structure or improvement on land is within its protection. We have the question: Can the digging of a dry hole as contracted for be regarded as an erection, structure or an improvement of the land within the meaning of the act? The contract shows that the project was exploratory. The drilling was to be done in a region where oil or gas had not been discovered, and the contract contained provisions as to the rights and liabilities of the parties if oil or gas was found and likewise provisions for the contingency that none was discovered. The plaintiff was to have an interest in the test well if oil, or gas was found in paying quantities, but no interest in the event that it was a dry hole. The experimental character of the project is shown by the contract provision that the rig, casing, labor and all machinery and material were to be furnished by the contractor and to remain his property, and another provision which appears to be wholly inconsistent with the theory that a lien might be acquired, namely, the provision that the driller who was to furnish all these appliances, was to pay all bills for labor and material and save the landowner harmless from any mechanic's liens by reason of such bills. The parties were at liberty to contract as they thought best in regard to the payment of the material and labor used in drilling the well, competent to contract that the driller should rely on the individual responsibility of the landowner and that the land should not be subject to liens therefor, and the contractor could by agreement divest himself of the right to claim a lien if otherwise one might have been claimed. (*Kelly v. Johnson,* 251 Ill. 135.) How far a contract provision or waiver of a lien by a contractor might affect subcontractors is not involved here and no consideration is given it.

Apart from the plaintiff's agreement to protect the landowner from liens, the underlying principle of our mechanic's lien law is that if one by agreement or with the consent of the owner of land enhances its value by furnishing material or performing labor for the improvement of the land, he is deemed to have an interest in it to the extent of the value of such labor and materials. As said in *Windmill Co. v. Baker,* 49 Kan. 434, 439, 30 Pac. 472:

"The principle upon which a lien is given for improvements upon land is that it adds to the value thereof."

Here nothing was intended to be added or left on the land, if oil

or gas was not found. As we have seen the contingency that the enterprise might result in a dry hole was within the contemplation of the parties, and when the exploration had ended, no building or structure of any kind was left upon the land and no improvement had been made upon it nor had anything been added to its value. Doubtless a contract might have been made that would have warranted a lien on the rig and any substructure placed in the ground as well as a superstructure, but the material and labor furnished under the contract in question did not, we think, bring the claim within the statute or furnish a basis for a lien.

In a case which is not closely in point, but which has some analogy to the case in hand, a claim for a lien was made under a contract to explore for iron. The statute under which the claim was made provided that whoever performed labor or furnished skill, material or machinery in grading, filling in or excavating any land, by virtue of a contract, should have a lien. A lease was given by the owner of land to explore for mineral believed to be in it. The lessee employed the assignor of the plaintiff to drill a hole and make the test, and he drilled a six-inch hole one hundred and sixty feet deep and claimed the right to a lien. In determining the question the court said:

"It will be observed that all the numerous things specified in that section relate to the permanent improvement or enhancement of the value of the land. The word 'excavating' is found in immediate connection with other words of this import,—'grading, filling in, or excavating any land.' Grading land, whether by cutting down or filling in, so as to permanently render it more valuable for future use, constitutes an improvement of it; and while drilling a hole in the ground is 'excavating,' in the broadest sense of the word, yet it is not every hole in the ground that will constitute an excavation for which a lien on the land is given. To cut a furrow with a plow, or to dig a pit in which to bury vegetables during the winter, is to make an excavation in the soil, but it would hardly be claimed that the statute gives a lien on the land for such labor. The word 'excavating' is used in this statute in a much more restricted sense. It refers only to excavations in making improvements upon the land.

"The right to a lien does not depend upon the size or shape of the excavation, but upon the purpose for which it is made. If it was made in digging a cellar under a building, opening or constructing a mine, or other similar purpose, these might be well considered acts done in making improvements upon the land, for which the party performing the labor would have a lien. The same would be true of labor performed in "stripping" a mine preparatory to getting out the ore, which was the case in *Kinney v. Duluth Ore Co.,* 58 Minn. 455, 60 N. W. 23. But the hole drilled by plaintiff's assignor was not made for any such purpose. It was not made for the purpose or in the progress of any

improvement upon the land. When made, it did not improve the land, or tend in any way to enhance its value. It was drilled merely for exploring purposes, and to ascertain what the actual value of the land was. When completed, it was of no further use, and constituted no part of any improvement upon the land. It did not constitute an excavation of the land, within the meaning or spirit of the lien law." (*Colvin v. Weimer*, 64 Minn. 37, 39.)

The act of the legislature in making special provision for liens for those who furnished material or performed labor in digging or drilling for oil or gas carries the inference that the ordinary mechanic's lien statute did not cover explorations for oil and gas like the one in question but in this later act it did not provide for claims like that asserted by plaintiff. It is insisted that under the mechanic's lien statute, the test well should be regarded as an improvement since the provision for mechanic's liens is remedial in nature and therefore should be given a liberal construction for the benefit of those for whose protection it was enacted. We have held that it must be clearly shown that the claim comes within the statute. The court cannot under the guise of interpretation extend the statute to cases not within its provisions, but when a case is found to be within the statute and the question is whether the claimant has taken the proper steps to enforce the lien, a liberal rule of interpretation should be applied. (*Nixon v. Cydon Lodge*, 56 Kan. 298, 43 Pac. 236; 27 Cyc. 20.)

Our conclusion is that the claim of plaintiff as pleaded is not within the statute and therefore the judgment is reversed, with directions to sustain the demurrer to plaintiff's petition.