No. 28,434.

E. F. GIVEN et al., *Appellees,* v. J. F. CAMPBELL et al., *Defendants;* THE CONTINENTAL SUPPLY COMPANY, *Appellant.*

(273 Pac. 442.)

Opinion filed January 12, 1929.

*Charles G. Yankey, John L. Gleason, Kenneth K. Cox,* all of Wichita, and *John E. Wheeler,* of Marion, for the appellant.

*Braden C. Johnston,* of Marion, *James A. Conly* and *George Gardner,* both of Wichita, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This action originated as a suit to quiet title to plaintiff's leasehold in 80 acres of Marion county land. It developed into a sharp controversy over a cross petitioner's right to a materialman's lien on the leasehold for certain articles furnished to a drilling company which had undertaken to drill a prospect hole for oil and gas on the premises. When it first set about this undertaking there was no written contract between the drilling company and the lessee. Later, when failure seemed to be foreshadowed, the status of the parties and their rights and liabilities were defined in a written contract dated August 25, 1927. As then anticipated, the drilling company was unable to go on with its task, and on October 1, 1927, it made a contract with one Earl Frates, who had acquired an interest in this leasehold, whereby he took over the rights and duties of the drilling company under its contract of August 25 and agreed to prosecute the drilling to a completion of the well if that should prove feasible. An excerpt from that contract of October 1 is emphasized on our attention by appellants:

" . . . party of the second part [Earl Frates] shall pay . . . all labor and material liens or accounts contracted by party of the first part in drilling of such well, which liens and accounts party of the second part hereby agrees to immediately pay . . ."

The appellant, the Continental Supply Company, which had supplied sundry materials to the drilling company while it was engaged in drilling the well, filed a lien statement with the register of deeds, with attached and verified account stated, and served notice thereof to all concerned.

The trial court made findings of fact concerning the indebtedness due from the drilling company to appellant, found that the lien statement was timely filed and in due form, and found that the appellant had a valid lien on the chattels of the drilling company, but held that under the terms of his contract Frates was only bound

to pay for such items of material, machinery and oil-well supplies itemized in the lien statement and verified as were subject to become a lien upon said oil and gas lease; and—

" . . . That certain articles making up said sum of $988.34, were for tools, machinery and equipment used in sinking of a well for oil and gas upon said premises, which form no part of a well or completed work and are not labor or material within the meaning of the law providing for a lien upon oil and gas leaseholds."

Accordingly, in the judgment which followed, the supply company's claim to a lien on the leasehold was denied. This ruling is assigned as error, appellant's argument in effect being that the interpretation this court has heretofore given to R. S. 55-207 was dictum and unsound. The pertinent language of the statute (R. S. 55-207 as amended by Laws 1925, ch. 197) reads:

"Any person, corporation or co-partnership who shall under contract . . . with the owner of any leasehold for oil or gas purposes . . . furnish material, machinery or oil-well supplies used in the digging, drilling, torpedoing, completing, operating or repairing of any oil or gas well . . . shall have a lien upon the whole of such leasehold . . . Such lien shall be preferred to all other liens, or incumbrances which may attach to or upon such leasehold for gas and oil purposes. . . ."

In *Marion Machine Co. v. Allen,* 119 Kan. 770, 241 Pac. 450, this statute was construed thus:

"The tools and equipment used in the sinking of an oil and gas well which form no part of the well or completed work is neither labor nor material within the meaning of the lien statute." (Syl. ¶ 2.)

The general theory underlying lien statutes is that labor, material and supplies which are devoted to the construction of an improvement to realty, whether building, oil-and-gas well, or whatnot, add an actual value to the property, and in consequence the property may justly be bound as security to pay for contributions enhancing its value. But it would be an illogical extension of that theory to give a lien for materials and supplies which contribute nothing to the value of the property; and in the present case the court's finding was that the items for which appellant claimed a lien did not go into the permanent structure of the well. They were merely chattels constituting the miscellaneous equipment of a drilling company— used on this well to-day and on another to-morrow. We note typical items of the verified account, for the purchase price of which a lien on plaintiffs' leasehold was demanded:

| | |
|---|---|
| Bull rope | $40.01 |
| Belt | 21.82 |
| Wrench | .80 |
| Hammer | 1.50 |
| Water pail | .62 |
| Sand line reel | 267.75 |
| Drilling line (2,464 feet) | 635.90 |

Now, it is perfectly obvious that if this well were drilled to completion these articles would not become fixtures of the leasehold. They would constitute no part of the improvement of the property. They will be carried away and used on a second and third drilling job, and so on until they are worn out. Should appellee's leasehold be subject to a lien for the payment of this rope, belt, wrench, hammer, pail, sand line and drilling line? If so, will plaintiff's leasehold *alone* be subject to a lien therefor, or will all the leaseholds in the community on which. these chattels are successively used until they are worn out be likewise subjected to appellant's lien claim for their payment? Why should a vendor's lien be granted on an interest in realty for the price of a wrench, a hammer, or a water pail purchased for the use of the driller of an oil-and-gas well when no such lien is granted for the purchase price of a carpenter's hammer, a plumber's wrench or a plasterer's water pail similarly used in the construction of any other improvement on realty? The sufficient answer to these questions is found in the rule announced in *Marion Machine Co. v. Allen,* supra, and we are bound to hold that in the present case the trial court did not err in following it. Appellants argue that such an interpretation nullifies the statute. On the contrary, we think it gives it a rational interpretation and one in harmony with our other lien statutes, so far as the nature of an oil-and-gas leasehold will permit.

It is contended, however, that by the literal terms of his contract Frates bound himself to pay all accounts contracted by the drilling company, whether they were lienable or not. The excerpt from the contract quoted above, standing alone, might probably justify such interpretation, but the entire contract, which is quite too long for reproduction here, and which includes a pertinent reference to the terms of the earlier contract between Given and the drilling company, is fairly susceptible of an interpretation that Earl Frates did not absolutely bind himself to drill the well, but only to make a whole-hearted attempt to drill it. That was all the drilling com-

pany itself was bound to do, under the terms of its contract of August 25, 1927. It was there stipulated:

"[The drilling company] Party of the first part does hereby [agree with E. F. Given] within a reasonable time to again commence work upon such test well and to clean out and properly case the hole, if such hole can be cleaned out and casing properly set. And in case it is found to be impossible to clean out and case such hole, then party of the first part shall at once remove all of his tools and drilling appliances and the liability of both parties shall cease on account of any prior contract or agreement and no liability shall attach to either party on account thereof, party of the first part agreeing to at once remove any casing it may then have in such hole, and second party to pay all labor lien against said leasehold."

The second contract, of October 1, 1927, provides for the relinquishment of the drilling company's rights, and continues—

"And in consideration of such releases, party of the second part [Earl Frates] does hereby agree with said party of the first part that he will, within a reasonable time, commence cleaning out the aforesaid test well, that he will cause such work to be prosecuted with due diligence and in a workmanlike manner, at prices customary in such territory, and that when such test well is cleaned out, in condition where drilling can be resumed, then said well shall be measured for the depth drilled by party of the first part and party of the second part shall pay to party of the first part a sum equal to the amount of two dollars and fifty cents per foot for each foot so drilled by party of the first part, less the cost of cleaning out such hole by party of the second part, and also all labor and material liens or accounts contracted by party of the first part in the drilling of such well, which liens and accounts party of the second part hereby agrees to immediately pay, all moneys which may be due party of the first part to be paid ten days after said well is cleaned out and drilling resumed."

In the answer of Frates and the other plaintiffs to the cross petition of the lien claimant, the Continental Supply Company, it was alleged that pursuant to this contract of October 1, 1927, exhibit B, plaintiffs—

"Attempted to clean out said well and remove therefrom certain obstructions that were preventing the further drilling of said well.

"That said plaintiffs, in good faith, in attempting to remove said obstructions worked with a force of men for several days, and spent large sums of money, and said plaintiffs, in good faith, reached the conclusion that said obstructions could not be removed, and that said well could be no further drilled, and that plaintiffs abandoned said well.

"That by reason thereof, there is no sum due the Continental Supply Company under said contract shown as exhibit B."

It is possible to discern a certain basis for appellant's fault-finding

with a certain conclusion of fact and its correlative conclusion of law, made by the trial court. These read:

"The court further finds that on October 1, 1927, the plaintiff, Earl Frates, made and entered into a contract in writing with the said Advance Drilling Company, wherein and whereby he promised and agreed to pay all labor and material liens or accounts contracted by the Advance Drilling Company in the drilling of the well on the aforesaid oil-and-gas lease;

"As a conclusion of law the court concludes that the contract attached to plaintiffs' petition as 'exhibit B' binds the plaintiff, Earl Frates, to pay for only such items of material, machinery and oil-well supplies furnished and used in the drilling of said well as were subject to become a lien upon said oil-and-gas lease."

Under the issues made by the pleadings, such a conclusion is not manifestly erroneous. The evidence has not been abstracted. What it may have disclosed we do not know. It is not now contended that the judgment is contrary to the evidence; and a painstaking consideration of the record does not permit us to say that manifest error inheres in the judgment. It is therefore affirmed.