No. 30,859.

THE BRIDGEPORT MACHINE COMPANY, *Appellant,* v. W. M. McKNAB, MISSOURI-KANSAS GAS COMPANY and R. E. ANDREW, *Appellees.*

No. 30,865.

THE BRIDGEPORT MACHINE COMPANY, *Appellant,* v. W. M. McKNAB, MISSOURI-KANSAS GAS COMPANY and R. E. ANDREW, *Appellees.*

No. 30,922.

THE BRIDGEPORT MACHINE COMPANY, *Appellant,* v. THE STEVENS COUNTY OIL & GAS COMPANY, W. L. SIDWELL, THE SOUTHWEST KANSAS OIL & GAS COMPANY, W. M. McKNAB, MISSOURI-KANSAS GAS COMPANY and R. E. ANDREW, *Appellees.*

(18 P. 2d 186.)

Opinion filed January 28, 1933.

*D. W. Eaton,* of Wichita, for the appellant.

*James A. McDermott, Richard B. McDermott,* both of Winfield, and *G. J. Neuner,* of Kansas City, Mo., for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: The plaintiff in each of three separate actions, one in the district court of Morton county and two in the district court of Stevens county, appeals from the judgments denying it liens under the oil and gas labor and material lien statute (R. S. 1931 Supp. 55-207). The three cases were by agreement consolidated and tried together in the district court and are now considered together on appeal.

The defendants consist of the owners of the three oil and gas leasehold estates and R. E. Andrew, the contractor of such owners. Andrew is the contractor in all three cases, and the owners are the same in all the cases except that in one of the Stevens county cases three additional owners—being two corporations and one individual—are named as defendants.

The petitions allege that Andrew, the contractor, purchased goods, wares and merchandise from the plaintiff machine company for use in drilling an oil and gas well on each of the three different places described in these separate petitions and that he owes the plaintiff company for such separate purchases, and the plaintiff claims three separate liens therefor, having filed separate claims and having given notice thereof as required by law. The appellant classifies the purchases and the labor performed by it in each case as follows:

"(*a*) Those consisting of material which was consumed in the work of drilling.

"(*b*) Tools and equipment furnished for and used in the drilling.

"(*c*) Labor performed on tools and equipment."

· There were some items for each separate well under each of the three headings, and the evidence gives the description of each article furnished with price and whether it was consumed in the process of drilling or continued for further use after the completion of such well work, and also gives the amount of labor performed on the tools and equipment, and there was one item for rent of certain equipment. The trial court, however, did not make any findings as to any of these amounts, either collectively or in classes, but in general terms denied the lien in each case.

As to the first classification, which consists of material furnished which was consumed in the work of drilling, it may be that plaintiff might have been entitled to liens for some of such items, if there had been a finding of fact showing how they were consumed and whether completely consumed or exhausted. The evidence in one place shows that "the greater portion of these items were actually consumed and used up." In another place the evidence shows that 75 per cent of the material was consumed in the drilling of the well —that is, 75 per cent of it was worn out in drilling the well. Being consumed and being worn out are very different conditions, and besides not everything that is wholly consumed is lienable.

The main question involved in the appeal concerns the second class of items, viz.: tools and equipment furnished for and used in the drilling. Appellant reviews the history of the lien laws of this state and cites in that connection the case of *Bassett, Trustee, v. Carpenter,* 114 Kan. 828, 220 Pac. 1028, where the contractor endeavored to enforce a lien on the land on which he had, under a contract with the owner of the fee, drilled a dry hole, by bringing his action under the general mechanic's lien law (R. S. 60-1401 *et seq.*) instead of the oil and gas lien law, and it was held he was not entitled to a lien under the mechanic's lien statute, referring to the question of improvement of the land as follows:

"Apart from the plaintiff's agreement to protect the landowner from liens, the underlying principle of our mechanic's lien law is that if one by agreement or with the consent of the owner of land enhances its value by furnishing material or performing labor for the improvement of the land, he is deemed to have an interest in it to the extent of the value of such labor and materials." (p. 831.)

Appellant insists that the following language of the oil and gas statute is unambiguous and such as entitles it to liens in these cases:

"Any person, corporation or copartnership who shall under contract, express or implied, with the owner of any leasehold for oil and gas purposes, or the owner of any gas pipe line or oil pipe line, or with the trustee or agent of such owner, who shall perform labor or furnish material, machinery and oil-well supplies used in the digging, drilling, torpedoing, completing, operating or repairing of any oil or gas well, or who shall furnish any oil-well supplies or perform any labor in constructing or putting together any of the machinery used in drilling, torpedoing, operating, completing or repairing of any gas well, shall have a lien," etc. (R. S. 1931 Supp. 55-207.)

Appellant argues that it is entitled to liens under this statute for all material, machinery and oil-well supplies furnished by it and used

in digging or drilling the wells. There is no contention as to the plaintiff having furnished the tools and equipment in question, neither is there any question as to their being used in one or the other sense of that word in drilling and completing the wells. Some of the many definitions given in Webster of the word "use" are "to make use of," "to employ," "to exhaust," "to leave no capacity of force or use in." Appellant in its first classification of items sold, furnished and used in these cases describes them as material which was consumed in the work of drilling. That would be using those items in the sense of exhausting them in the terms of the definition above quoted, while machinery, tools and equipment would be used, but in the terms of being made use of and not exhausted. The testimony in these cases covers material under both of these definitions. The question is, Did the legislature intend to grant a lien for items in each class, for machinery made use of as well as material exhausted or consumed? Counsel for appellant recognizes the fact that this question has been twice decided by this court against his contention in the cases of *Marion Machine Co. v. Allen,* 119 Kan. 770, 241 Pac. 450, and *Given v. Campbell,* 127 Kan. 378, 273 Pac. 442, as to a lien for machinery, tools and equipment made use of, but he very earnestly and courteously criticises the reasoning and conclusions therein and insists that these decisions should be reversed and the opposite position taken on this question as has recently been done by the supreme court of Oklahoma. It is contended as to the Marion Machine Company case, *supra,* that because it concerned the question of notice, which was the same as that provided for in mechanic's lien cases and because of a reference to an earlier decision involving the mechanic's lien statute, the decision was wholly based upon the mechanic's lien law and not on the oil and gas lien statute. The latter statute is twice referred to in the opinion and two oil- and gas-well decisions are cited, and the following sentence appears in the concluding portion of the opinion, which shows the case was being considered and was determined under the oil-and-gas lien statute.

"The trial court found that the tools and equipment used by Allen in the drilling of the well on the leasehold estate, never became or formed a part of the permanent equipment of the lease, and that after the completion of the well the tools and equipment, excepting those worn out in the drilling, were moved from the leasehold." (p. 772.)

In the Given case, *supra,* it was held:

"Items of merchandise furnished to a drilling company designed for use as

part of its mechanical equipment in drilling a prospect hole for oil and gas, but not intended to be installed as part of the fixtures or improvements pertaining to the completed well, and to be removed and used elsewhere on other well-drilling projects, are not such material and supplies as are intended to become the basis for a materialman's lien on an oil-and-gas leasehold under R. S. 55-207 as amended by Laws 1925, ch. 197—following *Marion Machine Co. v. Allen,* 119 Kan. 770, 241 Pac. 450." (Syl. ¶ 1.)

The reasons given in the opinion for the decision thus reached were based upon the general theory underlying lien statutes to the effect that labor, material and supplies that are devoted to the construction of an improvement to realty add an actual value to the property, and it would be an illogical extension of that theory to give a lien for material and supplies which contribute nothing to the value of the property.

Counsel for appellant forcibly argues that nothing adds to the improvement or value of the property where a dry hole is the result of diligent and expensive drilling for oil or gas, and therefore no lien for any material or labor could attach. But the intention and expectation in connection with the project may be properly considered in arriving at the practical and reasonable construction of the statute. An excavation and the construction of foundation walls for an odd and unusual building on a vacant lot when the basement and the building project are later abandoned, adds no practical value to the premises and very likely are a detriment, but the contemplated plan and purpose in connection therewith made them of value at the time. The Oklahoma case especially relied upon by the appellant is *Wm. M. Graham Oil & Gas Co. v. Oil Well Supply Co.,* 128 Okla. 201, wherein the court held that machinery and supplies were lienable under a statute similar to ours, when furnished and used in the drilling of an oil or gas well, whether consumed in use or annexed or retained for further use. The opinion recognizes the fact that a strict construction of lien laws prevails in several other jurisdictions, but asserts that Oklahoma adheres to the practice of broadly applying the attachment of liens under the oil-and-gas lien law as well as other lien statutes. Lien laws in this state are purely statutory, and as they confer special privileges upon one class of persons over others, those claiming such privileges should bring themselves clearly within the provisions of the statute, however liberally the provisions for the enforcement of liens may be construed when liens are shown to have attached.

"A mechanic's lien is purely a creation of statute, and those claiming such

a lien must bring themselves clearly within the provisions of the statute authorizing it." (*Potter v. Conley,* 83 Kan. 676, syl. ¶ 1, 112 Pac. 608.)

In this state the strict construction of all lien statutes has been the general rule as applied to the matter of determining to whom and for what a lien statute gives a lien. After interpreting it to entitle a party to a lien for a particular article or thing, then a liberal interpretation has generally been given as to its enforcement, as is shown by the following quotations:

"As mechanics' liens are purely statutory, their operation and extent must be found within the terms of the statute creating and defining them. As the statutes confer special privileges upon one class of persons over others, it must clearly appear that those claiming the benefits of the statute are within its provisions. The law is entitled to a liberal interpretation in its application to all persons or classes who are within the protection of the statute, but this rule cannot be invoked to confer the special privileges and preferences of the law upon those not definitely included by the statute." (*Nixon v. Cydon Lodge,* 56 Kan. 298, 304, 43 Pac. 236.)

"We have held that it must be clearly shown that the claim comes within the statute. The court cannot under the guise of interpretation extend the statute to cases not within its provisions, but when a case is found to be within the statute and the question is whether the claimant has taken the proper steps to enforce the lien, a liberal rule of interpretation should be applied." (*Bassett, Trustee, v. Carpenter,* 114 Kan. 828, 833, 220 Pac. 1028.)

We adhere to this method of construing lien statutes and to the opinions expressed in *Marion Machine Co. v. Allen,* 119 Kan. 770, 241 Pac. 450, and *Given v. Campbell,* 127 Kan. 378, 273 Pac. 442, to the effect that machinery, tools and equipment used in drilling oil and gas wells which are retained by the contractor are not lienable items. It follows that labor and supplies furnished and used in repairing such machinery, tools and equipment retained by the contractor are not lienable.

We see no reason in deviating from the earlier position of this court as to rent for the use of tools. It was held in *Road Supply and Metal Co. v. Bechtelheimer,* 119 Kan. 560, 240 Pac. 846, that rent for the use of tools was neither labor nor material within the meaning of the mechanic's lien statute. It was held in *Arkansas Fuel Oil Co. v. McDowell,* 119 Okla. 77, that the furnishing of fishing tools in the drilling of an oil or gas well on rental contract is neither labor nor material within the purview of the Oklahoma lien statute.

The judgment is affirmed.

THIELE, J., not participating.