## OIL WELL SUPPLY CO. v. FIRST NAT. BANK OF WINFIELD, KAN.

### No. 1842.

Circuit Court of Appeals, Tenth Circuit.

Aug. 28, 1939.

Irwin H. Stearns, of Wichita, Kan. (Cliff A. Matson and E. P. Villepigue, both of Wichita, Kan., on the brief), for appellant.

J. A. McDermott and Harry O. Janicke, both of Winfield, Kan. (Chandler F. Jarvis and J. M. McDermott, both of Winfield, Kan., on the brief), for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

The Oil Well Supply Company, Appellant herein, furnished material and supplies to the Buckeye Consolidated Oil Company, used in drilling an oil and gas well on an eighty acre lease in Cowley County, Kansas. These supplies and materials were furnished during a period of time beginning January 2, 1926 and ending September 8, 1926. Among the material and supplies furnished were certain items of casing and tubing involved in this case. This casing and tubing were used in drilling Well No. 3 on the lease, which well was a dry hole. The casing and tubing were removed from the well during a period of time beginning April 26, 1926, and ending August 7, 1926. When removed from the well, said material was stacked in a pile on the lease and was not thereafter used in any well on the lease.

On October 30, 1926, Appellant filed its lien statement, claiming and perfecting a lien for the material and supplies furnished in the drilling of said well. On January 26, 1927, the First National Bank of Winfield, Kansas, Appellee herein, took a chattel mortgage from the Buckeye Consolidated Oil Company on the casing and tubing involved, which at that time was piled on the ground on the lease. Said mortgage was filed for record January 31, 1927. Appellee took possession of and sold all of the casing and tubing involved in this action, during May, August and September of 1927.

On May 13, 1927, Appellant filed its action against the Buckeye Consolidated Oil Company and Thomas .H. Bagnell and the First National Bank of Winfield, Kansas, seeking to foreclose its mechanic's lien. By stipulation a decree was entered in the case on July 14, 1927, awarding Appellant judgment against the Buckeye Consolidated Oil Company and Thomas H. Bagnell in the sum of Twenty-seven Thousand, Eight Hundred Fifty-seven and 24/100 ($27,857.24) Dollars. Appellant was decreed to have a good and valid prior lien on all the property set forth in its lien statement, except the property in controversy here. It was stipulated that the case should be continued as to Appellee, and no adjudication was had at said time as to the right of priority between Appellant and Appellee.

Appellee filed its answer, claiming it had a superior and prior lien on the casing and tubing by virtue of its mortgage. At the time of the filing of its answer, Appellee had already possessed itself of and sold the property covered by its chattel mortgage, a fact at that time unknown to Appellant.

The case continued undisposed of on the docket of the court for a number of years. On April 14, 1930, Appellant, having first procured permission, filed a supplemental bill. To this pleading Appellee filed a motion requesting that Appellant be required to re-plead, alleging that the original action was docketed as an equitable proceeding and as an action for the foreclosure of a mechanic's lien, and that the supplemental bill filed was an action at law for conversion and by reason thereof constituted a departure from the cause of action set out in the original petition. The court made an order requiring Appellant to re-plead and it thereupon filed its amended supplemental bill.

In both its supplemental bill and the amended supplemental bill Appellant stated that Appellee had sold the property in controversy, the exact dates and time of which sales were unknown; that Appellee had no right, title, claim or interest in and to said property superior to the rights of Appellant; that Appellant is entitled to have its mechanic's lien decreed to be a prior and superior lien; that after said property had been disposed of by Appellee, the lien and the claim of Appellant attached to the proceeds of the sale as received by the bank, and prayed that the proceeds be held to be a trust fund for the use and benefit of Appellant.

In the amended supplemental bill, Appellant stated that on or about March 18, 1930, it was informed that Appellee had sold and disposed of said property, the exact dates of which sales were unknown to Appellant; that the amended supplemental bill was not an action for conversion but an attempt to impress its lien and claim on the funds received by the bank on account of the sale of said property.

The trial court made findings of fact and conclusions of law, and concluded as a matter of law that Appellant, by the filing of its lien statement, did not obtain a lien upon the tubing and casing involved and that the mortgage of Appellee was a first and valid prior lien thereon.

The court further found that the filing of the supplemental bill of complaint was in the nature of an action in conversion and was a departure from the original bill

of complaint, that more than two years had elapsed since the date of the alleged conversion, and that the statute of limitations had run against the alleged cause of action. Judgment was entered in favor of Appellee and against Appellant. From this judgment an appeal has been taken to this court.

This appeal involves two questions. First, did Appellant have a valid lien upon the casing and tubing, and, second, did its amended and supplemental amended bill of complaint constitute a departure stating a new cause of action?

Appellee's theory is that Appellant never obtained a valid lien on the casing and tubing for the reason that the casing and tubing formed no part of any permanent improvement upon such leasehold estate, and for the further reason that the casing and tubing had been removed from any connection with the real estate prior to the filing of such lien statement. The theory of Appellee is that nothing adds to the improvement or value of property where a dry hole is the result of drilling operations for oil or gas, and therefore no lien for any material or labor can attach.

In support of its contention, Appellee relies upon the following cases, decided by the Kansas Supreme Court: Marion Machine, Foundry & Supply Co. v. Allen, 119 Kan. 770, 241 P. 450; Bridgeport Machine Co. v. McKnab, 136 Kan. 781, 18 P.2d 186; Given v. Campbell, 127 Kan. 378, 273 P. 442.

Marion Machine Co. v. Allen et al., involved the right to a lien for the furnishing of tools and equipment, such as ropes, pulleys, bits, etc., used in the drilling of a well, and it was held that it was never within the contemplation of the parties that such articles should remain or become a part of the permanent improvement and therefore furnishing them was not the basis for a lien. The same question was involved in Bridgeport Machine Co. v. McKnab. There the court held that machinery, tools and equipment furnished and used in the drilling of an oil or gas well that are retained by the contractor for future use are not lienable under the provisions of the Kansas lien law.

In the Given-Campbell case, the court held that items of merchandise furnished to a drilling company, designed for use as part of its mechanical equipment in drilling a test hole, but not intended to be installed as part of the fixtures or improvements pertaining to the completed well and to be removed and used elsewhere on other drilling projects, are not such material and supplies as are lienable. In all of these cases the decision rested upon the fact that it was not within the intent of the parties that such articles of merchandise or material should, in the event of production, remain upon the lease, but that it was the intent of the driller to take them with him and use them in the drilling of other wells. The question as to whether production resulted or a dry hole resulted was not involved.

In the Bridgeport Machine case the same contention was made as is made here, and was rejected by the court. In that case, discussing this question, the court says [136 Kan. 781, 18 P.2d 188]: "Counsel for appellant forcibly argues that nothing adds to the improvement or value of the property where a dry hole is the result of diligent and expensive drilling for oil or gas, and therefore no lien for any material or labor could attach. But the intention and expectation in connection with the project may be properly considered in arriving at the practical and reasonable construction of the statute. An excavation and the construction of foundation walls for an odd and unusual building on a vacant lot when the basement and the building project are later abandoned add no practical value to the premises, and very likely are a detriment, but the contemplated plan and purpose in connection therewith made them of value at the time."

In Skinner et al. v. Quadrangle Oil Co., et al., 112 Kan. 742, 212 P. 684, a dry hole was drilled and a lien was granted on the rig and casing in the hole for materials and supplies furnished.

In Williams et al. v. Otstot Oil Co., 129 Kan. 210, 282 P. 710, a lien was granted upon casing which had been borrowed or rented by the owner of the lease, who agreed to furnish the casing under an agreement by which the owner of the casing expressly reserved title and reserved the right to have returned to it the casing unless it was purchased by the owner of the lease. Although the option to purchase was not exercised, it was held in this case that a driller, drilling under a contract with the owner of the lease, would have a lien on this casing.

In Fees v. Ritchey, 136 Kan. 221, 14 P.2d 652, the owners of an oil and gas

lease contracted with a party to drill an oil and gas well, and agreed to furnish the pipe. The owner rented the pipe from another person with the right to buy the pipe if the well was a producer. The well was a dry hole. The court gave the contractor a lien on this pipe under his contract with the owner of the lease. These decisions support the statement of the Supreme Court of Kansas in Bridgeport Machine Co. v. McKnab that the intention and expectation of the parties in connection with the project are controlling, rather than whether a producing well or a dry hole results.

The lien statute of the state of Montana is the same as that of Kansas. The Montana Supreme Court decided the same question in the case of Continental Supply Co. v. White, 92 Mont. 254, 12 P.2d 569. The facts in that case are identical with the facts here. There a dry hole was drilled, the casing was pulled from the well, and was piled on the lease and sold by the operator. The only difference between that case and this is that there the casing had been sold before the Continental Supply Company filed its lien statement. A lien was granted to the Continental Supply Company on the casing.

To adopt the construction of the Kansas lien law contended for by Appellee would lead to an absurd situation. One furnishing materials and supplies, especially casing and tubing, would never know whether he had a lien for such material furnished until the completion of the well, and if a dry hole resulted, although it was contemplated by the parties when the casing was furnished that it would stay and become a part of the improvement, yet the claimant could not look to the material furnished but would have to rely solely upon the credit of the debtor.

Appellee further contends that Appellant can have no lien on the casing and tubing because the lien statement was not filed while the casing was in the well. In support of this contention it cites Bittenbender v. Fisher, 121 Kan. 458, 247 P. 849. In the Bittenbender case the plaintiff had furnished certain articles of equipment to be used in the drilling of a well, and filed a lien statement, claiming a lien on designated, specific articles of property. The lien statement provided that it was to reach appliances then on the lease. The promoter of the well became financially embarrassed and subsequent to the filing of the lien statement, executed a contract with another person, whereby he procured the loan of some casing to finish the well. The court held that the loan of this casing was a mere temporary expedient; that it was never intended by the parties that it should become a part of the permanent improvement. The court said that in view of the fact that the lien claimant had filed his statement claiming a lien on the appliances then on the lease, and this casing having been furnished thereafter, he did not have a lien on the casing. The court indicated, however, that even under these circumstances, if the casing had been on the lease and was being used at the time the lien statement was filed, then, under a liberal interpretation of the statute claimant would also have a lien on this casing. This case is distinguished by the fact that the lien statement filed claimed a lien only upon the property on the lease at the time of the filing of the lien statement.

The Supreme Court of Kansas has held that when a case is once found to be within the statute and the question is whether the claimant has taken the proper steps to enforce the lien, a liberal rule of interpretation should be applied. Bassett v. Carpenter et al., 114 Kan. 828, 220 P. 1028; Bridgeport Machine Co. v. McKnab et al., 136 Kan. 781, 18 P.2d 186, 187.

We must distinguish between the right to a lien and the enforcement thereof. The filing of the lien statement and the foreclosure of the lien form no part of the right, but are merely steps in the enforcement of the right. They are a part of the remedy. Mitchell v. Penfield, 8 Kan. 186; Weaver v. Sells, 10 Kan. 609; Nixon v. Cydon Lodge, 56 Kan. 298, 43 P. 236; Bell v. Hernandez, 139 Kan. 216, 30 P.2d 1101; Fossett v. Lumber Co., 76 Kan. 428, 92 P. 833, 14 L.R.A.,N.S., 918. [3,4] The Kansas lien statute provides that such lien shall be preferred to all other liens or encumbrances subsequent to the commencement of or the furnishing or putting up of any machinery or supplies. Gen.St.Kan.1935, 55-207. This gives a lien from the time of the furnishing of the material and provides that it is superior to any other liens accruing thereafter. The Kansas statute provides that the lien must be filed within four months from the time when the last material was furnished or last labor done. Gen.St.Kan.

1935, 55-209. To hold with Appellee that Appellant obtained no lien because it did not file the lien statement while the casing was in the well would be to read something into the Kansas statute which is not there. The lien right dates from the time of the furnishing of the material, and when the lien statement is filed, if filed within the four months, it dates back to the first furnishing of such material and no intervening encumbrances or liens superior to such lien right can attach. The removal of the casing from the well did not destroy Appellant's right to a lien.

The Montana lien statute as to preference of such a lien is the same as that of Kansas. The Montana Supreme Court considered this question in Continental Supply Co. v. White, 92 Mont. 254, 12 P. 2d 569, the facts of which case have already been set out herein, and held that when a lien statement was filed, the lien attached to the property from the first date when materials and supplies were furnished.

The Utah Supreme Court, in construing a similar statute, held, in the case of Sanford v. Kunkel, 30 Utah 379, 85 P. 363, 1012, that a mechanic's lien filed within the time specified in the statute takes effect as of the date of the commencement of the work and the furnishing of material and is prior to intervening equities.

In Illinois, in the case of Gaty v. Casey et al., 15 Ill. 189, 190, in granting a lien on property which had been severed from the real estate, the court said:

"If this was the condition of the property while it was attached to the freehold, and formed a part of the mill, that condition was not changed by the severance from the freehold, by means of the fire. That could not and ought not to destroy the lien of the complainants upon the materials."

Did the supplemental bill and amended supplemental bill state a new cause of action? Appellee contends that the original bill stated a cause in equity for the foreclosure of a mechanic's lien, while under the amended and supplemental bill there was stated a cause of action at law in trover and conversion.

The cases quite uniformly hold that a mere change in the remedy by filing an amended or supplemental pleading after the statute of limitations would have bar-

red the action except for the original pleading, will not be considered a new cause of action, but will date back to the original bill. Friederichsen v. Renard, 247 U.S. 207, 38 S.Ct. 450, 62 L.Ed. 1075; Bemis Bros. Bag Co. v. United States, 289 U.S. 28, 53 S.Ct. 454, 77 L.Ed. 1011; Case v. Blood, 71 Iowa 632, 33 N.W. 144; McKeighan v. Hopkins, 19 Neb. 33, 26 N.W. 614; Taft v. Stow, 174 Mass. 171, 54 N. E. 506.

A departure from law to equity, or vice versa, resulting from an amended pleading, is not the test as to whether a new cause of action is stated. Friederichsen v. Renard, 247 U.S. 207, 38 S.Ct. 450, 62 L.Ed. 1075. A still weaker test is the prayer for relief. Bemis Bros. Bag Co. v. United States, 289 U.S. 28, 53 S.Ct. 454, 77 L.Ed. 1011.

Appellee relies upon the case of Union Pacific R. Co. v. Sweet, 78 Kan. 243, 96 P. 657. That case presents an entirely different situation. In that case plaintiff, in his petition, sought to recover damages for the negligent setting of a fire, alleging a fire at a certain time and place, and after the statute of limitations had run, filed an amendment seeking to recover damages resulting from another and different fire which was started five miles distant from the one relied upon in the original petition.

The doctrine of election of remedies is a harsh one, the scope of which should not be extended. It has never been a favorite of equity. Friederichsen v. Renard, 247 U.S. 207, 38 S.Ct. 450, 62 L.Ed. 1075. In the case of Hardin v. Boyd, 113 U.S. 756, 5 S.Ct. 771, 28 L.Ed. 1141, in a suit to annul a land contract for fraud, the trial court permitted an amendment to the bill, adding a prayer in the alternative for a decree affirming the contract, granting a lien for the unpaid purchase price, and for foreclosure. This was upheld by the Supreme Court of the United States.

Proceedings to foreclose a mechanic's lien, though the lien is created by statute, are equitable in their nature and the principles of equity will apply in enforcing the lien. Shaw v. Stewart, 43 Kan. 572, 23 P. 616; E. W. Smith Lumber Co. v. Arnold, 88 Kan. 465, 129 P. 178; Bell v. Hernandez, 139 Kan. 216, 30 P.2d 1101. Since the proceedings to foreclose the mechanic's lien are equitable, the court will, in a given case, extend its jurisdic-

tion over the proceeds arising from the sale of the property to which the lien attached, where the specific property cannot be reached. 40 C.J. 278; Continental Supply Co. v. White, 92 Mont. 254, 12 P. 2d 569.

This was a proceeding in a court of equity to foreclose a mechanic's lien. The Appellee appeared in court and filed its answer claiming a superior lien. At the time it filed its pleading it had already sold the property and converted the same to its use. This fact it did not reveal in its pleading, but asked a court of equity to decree its mortgage to be a first and prior lien. The jurisdiction of a court of equity having attached, it could not be defeated by the wrongful conversion of the property by the appellee. Having assumed jurisdiction, the court had full power to do all that was necessary to make effective its decree of foreclosure.

The amended and supplemental amended bill did not state an action in conversion. The Appellant was not entitled to the immediate possession of the property wrongfully removed from the leasehold by Appellee. It was only entitled to have its claim decreed to be a lien and to ask for the sale of the property. Not being entitled to the possession of the property, it could not have maintained an action at law for its conversion. The amendment to the bill did not relate to the cause of action or state a new cause of action. It related simply to the remedy which Appellant sought and which was made necessary by changed conditions.

Appellant prayed for judgment against Appellee for Four Thousand Eight Hundred Fourteen and 25/100 ($4,814.25) Dollars, and six per cent interest thereon from October 1, 1927, that evidently being the time fixed when the property was sold and reduced to cash by Appellee. As has been said, this is not an action in conversion. Appellant was not entitled to the immediate possession of this property. It was entitled to have its lien claim adjudged a lien and then to have the property subjected to its claim. Appellant was not entitled to have a sale of the property before its claim was established as a lien on the property. It is not entitled to the proceeds from the sale of the property before it can demand the property. Judgment should have been entered for Appellant for Four Thousand Eight Hundred Fourteen and 25/100 ($4,814.25) Dollars, together with interest at six per cent from the date of the rendition thereof.

The judgment of the trial court is reversed, with direction to enter judgment for Appellant as indicated herein.