## SKLAR v. LILLY–THOMPSON DRILLING CORPORATION et al.

### No. 622.

District Court, W. D. Louisiana, Opelousas Division.

June 3, 1942.

Wilson & Abramson, of Shreveport, La., for plaintiff.

Deutsch, Kerrigan & Stiles, of New Orleans, La., and Golden, Croley & Howell, of Dallas, Tex., for defendants Oil Incomes, Inc., and Humphrey Brothers.

PORTERIE, District Judge.

The unpaid vendor of a drilling rig, having taken a chattel mortgage at time of sale, sues to recover from the purchaser the alleged unpaid purchase price of $42,000, with the recognition of the privilege of the vendor and of the preference of his mortgage. This phase of the suit gives the court no issue to decide, as the purchaser (drilling contractor) has accepted service of the peti-

tion, has merely denied perfunctorily the allegations of the plaintiff, was not represented by counsel at the trial—and the plaintiff at the trial proved the debt. The real issue of the case is contained in that part of the petition in which the unpaid vendor of this drilling rig alleges, further and additionally, that he has a lien and privilege in this amount of $42,000, the amount unpaid by the purchaser drilling contractor, against the lease of third persons (made parties defendant), on and in the development of which lease this unpaid rig was used by the drilling contractor. This lien and privilege is presumed to exist under the provisions of Act 145 of 1934, as amended by Act 100 of 1940.

The plaintiff has placed in the record the certified copy of the vendor's lien and chattel mortgage retained by him at the time of the sale of the drilling rig, showing recordation in the parish of Evangeline, State of Louisiana, in which parish the real estate on which the drilling rig was used for oil exploration is located; has also placed of record the drilling contract between the Lilly-Thompson Drilling Corporation, the purchaser of the drilling rig, on the one hand, and Humphrey Brothers, a partnership, of Dallas County, Texas, and Oil Incomes, Inc., a Texas corporation, the owners of the mineral lease, on the other, showing the various detailed stipulations of the drilling agreement, no particular of which directly or indirectly affects the question of whether or not a lien and privilege is accorded the unpaid vendor of the drilling rig on "the oil, the lease and well or wells, drilling rigs, standard rigs, machinery, equipment, appurtenances, appliances, buildings, tanks and all other structures situated thereon for the drilling, equipment and operation of same" (§ 4 of the Act); a certified copy of the assignment by George E. Lilly and L. R. Thompson to Joe E. and Layton A. Humphrey of a one-half interest in and to an oil and gas lease on the same real estate, which likewise does not affect the question of the case; a certified copy of an assignment, otherwise called an agreement, between George E. Lilly and L. R. Thompson, referring to this leasehold, which we conclude does not change or modify the question of this case; the original of a notarial declaration, dated June 16, 1941, by the Lilly-Thompson Drilling Corp. and George E. Lilly, as an individual, authorizing Humphrey Brothers and Oil Incomes, Inc., to pay the sum of $12,000 to Sam Sklar out of the first money that may be due the declarants under the drilling contract, "which money shall be credited by the said Sam Sklar on the purchase price of the drilling rig"; and the original of a notarial declaration, dated June 17, 1941, by Humphrey Brothers and Oil Incomes, Inc., which, after referring to the drilling contract and to the notarial declaration of the previous day by Lilly-Thompson Drilling Corp. and George E. Lilly, as an individual, acknowledges "notice and receipt of copy of said instrument from Lilly-Thompson Drilling Corporation and George E. Lilly to Sam Sklar, Operator of the Louisiana Iron and Supply Company, dated June 16, 1941 and (they) agree that if, as and when, under the terms of said drilling contracts, any monies become due and payable to George E. Lilly or Lilly-Thompson Drilling Corporation, such sums will be paid to Sam Sklar, Operator of the Louisiana Iron and Supply Company in accordance with and to the extent stated in the above mentioned instrument of June 16, 1941. Except as to the partial assignment of monies if, as and when the same become due and payable as hereinabove stated, nothing herein shall be construed as affecting, altering or impairing any of the provisions of the said drilling contracts and nothing herein shall change or affect the terms and conditions upon which monies shall become payable to George E. Lilly or Lilly-Thompson Drilling Corporation thereunder; and without limiting the scope or effect of this general stipulation, it is specially understood that the rights of the undersigned, under said drilling contracts to pay any outstanding claims or indebtedness incurred by contractor in connection with the drilling of the wells covered by said contract and to deduct the amount so paid from any monies owing to George E. Lilly or Lilly-Thompson Drilling Corporation under said contracts all as therein provided, shall be and remain the same as if this instrument and the above mentioned authorization of payment to Sam Sklar, dated June 16, 1941, had not been executed.", which two declarations, the court concludes have no relation or bearing on the question as to the existence or the nonexistence of a lien and privilege of the character aforestated.

The main additional facts are that delivery of the drilling rig by Sam Sklar, the plaintiff, to the drilling contractor, the Lilly-Thompson Drilling Corporation, was in Lafourche Parish, at Golden Meadow, and from that point the Lilly-Thompson Drilling

Corporation moved the drilling rig to the mineral lease, in the parish of Evangeline, belonging to the defendants Humphrey Brothers and Oil Incomes, Inc.; that the exploration for oil was successful; that the drilling rig is no more in use by the Lilly-Thompson Drilling Corporation or anyone else; that no one prevents, and in particular Humphrey Brothers and Oil Incomes, Inc., do not prevent, the removal of the drilling rig from the lease.

The uncontradicted evidence is clear that, in keeping with the prevailing custom, the rig used for purposes of exploration, except for a few inconsequential items of piping, did not become a part of the oil development. It was proved that the drilling rig is, in this case as is the case by custom, removable by the owner, the drilling contractor, from this location to any other location.

The events having thus run, on September 19, 1942, in addition to the recorded chattel mortgage and vendor's lien aforedescribed, part of which recited in detail the items comprising the drilling rig, the plaintiff executed an affidavit regarding the same debt and placed it in the mortgage records of the parish of Evangeline, nearly three months after the original sale of the drilling rig and by which date the rig had been moved on the lease in Evangeline parish and the oil exploration had been completed; the recital of the affidavit being to the effect that (a) the Lilly-Thompson Drilling Corporation and George E. Lilly are indebted unto the affiant in the sum of $42,000 (representing the promissory note for the unpaid purchase price) and (b) "That the said sum represents a drilling rig furnished to the said Lilly-Thompson Drilling Corporation and Geo. E. Lilly, by the said Sam Sklar, on the 20th day of June, 1941, for use in the drilling of that well known as the Ortego No. 2, located on the following described land in Evangeline Parish, Louisiana:" (here follows a description of the leasehold, of 42.5 acres, more or less) "Deponent herein claims all liens and privileges granted by law in favor of the furnisher of materials and supplies. Deponent further asserts that the above lien and privilege is in addition to and supplemental to a chattel mortgage and vendor's lien retained by the same Sam Sklar on the drilling rig itself." This recorded affidavit pretends to strengthen or enlarge the rights of Sklar, the unpaid vendor of the drilling rig, in that "all liens and privileges granted by law in favor of the *furnisher of materials and supplies"* are claimed "in addition to and supplemental to a chattel mortgage and vendor's lien." (Italics supplied.) This additional right can refer only to the statutory lien and privilege that may exist under Act 145 of 1934, as amended by Act 100 of 1940.

Now, therefore, with these facts before us, the question, simply put, is whether or not, under the act of the Legislature, Humphrey Brothers and Oil Incomes, Inc., are liable for the unpaid purchase price of the drilling rig that entered their mineral lease for the exploration for oil because the drilling contractor with whom they happened to contract had not paid for his drilling rig.

██ Under our civil law, lien statutes are laws "in derogation of common right [and] must be strictly construed and cannot be extended beyond their precise terms." Red River Construction Co. v. Pierce Petroleum Corp., 1928, 165 La. 565, 569, 115 So. 752, 754; Cole v. Schexnadire, 1927, 163 La. 132, 111 So. 651; Rester v. Moody & Stewart, 1931, 172 La. 510, 134 So. 690. La. Civil Code, Arts. 3183, 3185.

We carve out of Section 1 of the amending statute the language which concerns us: "That any person, firm, corporation or association of persons *who shall * * * furnish * * ** drilling rigs, standard rigs, material or supplies whatsoever for or in connection with the drilling of any well or wells in search of oil, gas or water, or for or in connection with the operation of any oil, gas or water well or wells, shall have a lien and privilege on such oil, and on such oil, gas or water well or wells and the lease whereon the same shall be located, and on all drilling rigs, standard rigs, machinery, appurteances [appurtenances], appliances, equipment, buildings, tanks and all other structures thereto attached for drilling, equipment and operation of such well or lease, *for the amount due for such trucking, towing, barging, repairs, fuel, drilling rigs, standard rigs,* material or supplies * * *." (Italics ours.)

██ After a hurried and careless reading of the above language one might be misled and believe that the plaintiff would have a lien and privilege for the unpaid purchase price of the "drilling rigs." But when a close and contextual reading is made of the language "for the amount due for such trucking, towing, barging, repairs, fuel, drilling rigs, standard rigs," it is clear that the lien and privilege exists "for the

amount" due because of use of the drilling rig. The rental value of the drilling rig is the claim, the measure and limit of the lien. It is clear that the legislative intent was not, as claimed by plaintiff, to establish a lien and privilege in favor of the unpaid vendor of a drilling rig that just happens to be brought on the premises under a contract made by the drilling contractor with a lease-owner. There is no lien and privilege existing for such claim. The words "trucking, towing, barging" are used. These words imply no lien and privilege for the *unpaid purchase price,* if there be any, on the *truck, towboat* or *barge.* It follows, therefore, that the unpaid purchase price of the drilling rig is not possibly within the language of the Act.

■ There is no ambiguity. And since statutes of this character, in Louisiana particularly, are to be strictly construed, the contention of plaintiff is just beyond serious consideration.

Moreover, the argument of the plaintiff is contrary to the theory of lien and privilege. The lien and privilege would exist in this case for that which enriches or promotes the exploration; the unpaid purchase price of the transitory tool by which that benefit was wrought is not encompassed by the Act.

■ In the instant case, whether the drilling rig be paid or not paid has nothing to do with the application of the Act. The rent due, owed to the drilling contractor in whom is the title to the rig and which is gauged by the *use* of the drilling rig on the premises, would constitute a lien and privilege; the whole or the part of the purchase price that happens to be unpaid to the vendor of the drilling rig by the drilling contractor cannot be the measure of any lien and privilege under the Act.

In no conceivable way, and after much willing effort, can we lead ourselves to see how the unpaid vendor of the rig may classify as one "who shall furnish." Sklar, the plaintiff, has no title to the drilling rig; how can he "furnish"? The title is in Lilly-Thompson Drilling Company and George E. Lilly; *they* "furnish."

A comparative study of the Louisiana jurisprudence in interpreting liens to the furnishers of various materials and supplies will be in accord with the theory we have just applied. As to gasoline and oils furnished in the construction of an improvement, see Red River Construction Co. v. Pierce Petroleum Corp., 1928, 165 La. 565, 115 So. 752; as to the nonliability of a surety of the general contractor for an entire piledriver negligently damaged during its use upon a construction of a building, see Madison Lumber Co. v. Crane Service Co., 1930, 14 La.App. 363, 127 So. 892, 129 So. 189; as to the absence of a lien in favor of the furnisher of items of supplies used in building a railroad to haul material for the construction of a highway, the Court said: "The items embraced in the claim are not for material that became incorporated as a part of the highways; hence the claim must be rejected under our ruling in Red River Construction Co. v. Pierce Petroleum Corp., supra; State v. Smith, supra [167 La. 301, 119 So. 56]; Colonial Creosoting Co. v. Perry, 169 La. 90, 124 So. 182." See Long Bell Lumber Co. v. S. D. Carr Construction Co., 1931, 172 La. 182, 133 So. 438, 439.

The statute we are now interpreting is the most liberal one of the number of like character that have been passed in Louisiana. The amending act (Act 100 of 1940) simply extends the lien granted in the original act (145 of 1934) to cover oil produced and stored on the lease. The language pertinent here, "furnish any fuel, drilling rigs, standard rigs, material or supplies whatsoever for or in connection with the drilling of any well or wells" is found in each.

The case of Sutton-Zwoile Oil Co. v. Barr Petroleum Corp., La.App.1940, 197 So. 432, holds, interpreting the act of 1934, that a lien is allowed only for that which actually goes in the drilling of the well; that the value of the use of the rig and derrick, fixed by the stipulated rental, was the measure of the lien. This case in no wise brings into the picture the unpaid purchase price of the drilling rig brought upon the premises. To hold with plaintiff would mean in practice that no leaseowner would contract with a drilling contractor whose drilling machinery was in any way unpaid. It could not be a logical commercial policy. And it would bring about this absurdity: the unpaid vendor, as in the instant case, would be due $42,000 by the leaseowner; he would then move his drilling rig to some other mineral lease in the neighborhood, and would get a second right to $42,000; and so on. Or there is the alternative: that the first leaseowner, having paid the $42,000, that is, the unpaid purchase price, would become the owner of a drilling rig, willingly or un-

willingly. Incidently, in the instant case, since plaintiff received on the date of the sale of his drilling rig to the drilling contractor the cash payment of $5,000, there would have to be an adjustment made.

Two other cases cited by both parties as being susceptible of application in concluding this case are (a) Landis et al. v. Bridges et al., 1933, 178 La. 96, 150 So. 843, and (b) Davis v. Wilhite et al., La.App. 1937, 174 So. 707, 709. The former case (a) holds that Act 161 of 1932 grants a lien and privilege "only to such as perform labor or service in the drilling or operation of such wells or furnish material or supplies in connection therewith" and is "no law which grants a lien and privilege for the rent of, or damages to, a drilling rig, upon any gas or oil well or the machinery, appurtenances, etc., thereunto belonging." The lease of a drilling rig is involved. The latter case (b) is practically a reiteration of the holding of (a)— a dutiful following by the Court of Appeal of the superior court, the Supreme Court, except that Act 145 of 1934, and not Act 161 of 1932, is involved; but there is "no material difference in the two acts in so far as the present claim is concerned", and "Whether the agreement between plaintiff and defendants for the use of this equipment by defendants in their drilling operations amounted to a loan for use, or whether the claim of plaintiff be looked upon as damages or expenses incurred by plaintiff by reason of the failure of defendants to make the repairs as they had agreed to do, in neither event would plaintiff have a lien and privilege under Act No. 145 of 1934 * * *." That which was furnished was a "part of a drilling rig equipment."

The three cases, in our opinion, are categorically against the plaintiff and are, inferentially, for the defendants.

We are of the decided opinion that if the Legislature had intended to enact such a drastic departure from the Louisiana lien laws as generally and usually enacted and as commonly interpreted by our courts, clear and unmistakable language would have been used, and the phrase "purchase price" would appear in the statute.

It is of persuasive value to examine similar lien statutes of the other oil-producing states of the Union. In common law states the language of the statute is generally "furnishes *machinery* * * * for * * * drilling any oil or gas well." The word "machinery" is the equivalent of the words "drilling rigs, standard rigs." An analysis of the following cases interpreting equivalent language in similar lien statutes will make evident that a lien does not exist, under the facts of the instant case, to support the payment of the purchase price of the drilling rig brought on the mineral lease under a drilling contract: Jerecki Mfg. Co. v. Struther, Wells & Co., 14 Ohio Cir. Ct.R. 400; Given v. Campbell, 1929, 127 Kan. 378, 273 P. 442, 443; Bridgeport Machine Co. v. McKnab, 1933, 136 Kan. 781, 18 P.2d 186.

We should quote liberally from the language of the Jerecki Mfg. Co. case, as it gives such a well-expressed and logical exposition of the lien and privilege involved here—which in concept is the same, fundamentally, at common law and at civil law.

"It is not every sale of material or machinery, designed by the purchasers to be used in some form in connection with the construction of an oil or gas well, or some one of the structures named in the section, that its provisions will enable the seller to perfect a lien for the unpaid purchase price upon the finished well or structure, including the material or machinery so furnished. To enable the seller to accomplish that result, he must not only supply the material, machinery or labor on an express contract with the owner of the thing to be constructed, or his agent, trustee, contractor, or sub-contractor, for the express purpose of entering into the construction and becoming a part of the oil well or other structure; but the material or thing so furnished, must, in fact enter into and become a constituent part of the completed structure. The material or machinery must be incorporated into the finished whole, so that it loses its identity and ceases to exist as a separate entity. In such case, the title or ownership of the thing furnished, passes to and vests in the owner of the well or structure, as an entirety. The various elements constituting the completed thing, including the material so furnished in the interest of the owner, whether of leasehold or freehold, have become fused and solidified and are not susceptible of being divided and separately pursued and subjected, by legal process, to the payment of the price agreed to be paid; hence the law enables the seller, by following its provisions, to acquire a lien on the entire completed thing, to secure payment for the portion

contributed by the seller, towards the construction or repair of the entire structure or thing. Such law simply accomplishes natural justice between man and man, and its enactment was only the recognition and putting in the form of statutory provision of rights and equities already, and always, existing between parties to such a transaction; * * *." Cf. Graham Oil & Gas Co. v. Oil Well Supply Co., 1927, 128 Okl. 201, 264 P. 591.

The court can do none else but sustain the motion to dismiss filed by the defendants Humphrey Brothers and Oil Incomes, Inc.

On the day of trial, oral intervention was permitted by the court to be made in favor of Albert Artego, who claimed to have recorded a lien for labor and supplies, against George E. Lilly, and the Universal Oil Tool Company, who claimed also to have recorded a lien for material and supplies, all furnished in the actual operation of the drilling rig and for repairs to the drilling rig. But these interventions were abandoned as no proof was placed in the record in support of them.

Judgment as prayed for by plaintiff against the Lilly-Thompson Drilling Corporation and George E. Lilly, individually, will be signed upon presentation; also judgment sustaining the motion to dismiss, filed by Humphrey Brothers and Oil Incomes, Inc., and dismissing the suit of plaintiff against them will be signed upon presentation.