No. 44,807

Division No. 1360, Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America, *Appellant,* v. Topeka Transportation Company, Inc., *Appellee.*

(434 P. 2d 850)

Opinion filed December 9, 1967.

*Louis F. Eisenbarth,* of Topeka, argued the cause and was on the brief for appellant.

*L. M. Cornish, Jr.,* of Topeka, argued the cause, and *Ralph F. Glenn, J. W. Leuenberger, M. D. Bartlow* and *Edward B. Soule,* of Topeka, were with him on the brief for appellee.

The opinion of the court was delivered by

Fatzer, J.: This action was commenced by Division No. 1360, Amalgamated Association of Street Electric Railway and Motor Coach Employees of America, against the Topeka Transportation Company, Inc., for a mandatory injunction to compel arbitration of an employee's grievance that he was unjustifiably discharged, pursuant to the parties' collective bargaining agreement. The district court rendered judgment in favor of the defendant, and plaintiff has appealed.

The plaintiff, Division No. 1360, Amalgamated Association of Street Electric Railway and Motor Coach Employees of America, is hereafter referred to as the Union or appellant, and the defendant,

the Topeka Transportation Company, Inc., as the Company or appellee.

The events which gave rise to this action are briefly stated. On May 29, 1963, Ross W. Alumbaugh, a member of the Union and one of the Company's drivers, was involved in an accident in Topeka while driving a company bus. Alumbaugh had been an employee of the Company since March 17, 1944, and had seniority rights. When the company's insurance carrier attempted to process a liability claim which had been brought against the Company arising out of the accident on May 29, 1963, Alumbaugh refused to cooperate with company regulations by failing to appear at the Company's office after being requested to do so, and by refusing to give a statement to the Company concerning the accident. Several conferences ensued wherein the Company discussed with Alumbaugh the merits of his actions. During the final conference on January 13, 1964 (all other conferences were held within a few days prior to that date), Alumbaugh was officially discharged by Albert S. Moore, President of the Company.

On January 16, 1964, the Union filed with R. N. Stephenson, Superintendent of Transportation, an official declaration of grievances for and on behalf of Alumbaugh, pursuant to Section I, Paragraph 10 of the agreement hereafter noted, which stated:

"1. That the Company did through its officers on the 13th day of January, 1964, without justifiable cause, and in contravention and violation of the contract of employment included in the agreement above mentioned, discharge and dismiss the Association Member, Ross W. Alumbaugh.

"2. That the Company through its officers did on the 13th day of January, 1964, without justification and in contravention and violation of the contract of employment included in the agreement above mentioned, discharge the Association Member, Ross W. Alumbaugh, without advising or furnishing either him or the Association with the reasons, grounds, excuses, or basis therefor."

The agreement referred to in the declaration of grievances was the collective bargaining contract (hereafter referred to as the agreement) entered into by the Union and the Company on July 1, 1963. There is no contention the agreement is not controlling, and the parties concede that judicial construction of Paragraphs 4 and 10 (*a*) of Section I of the agreement is necessary to determine the issue presented.

The pertinent part of Paragraph 4 reads:

"*Management.* The management . . . and . . . direction of the working forces, including, but not limited to, the right to employ, promote,

suspend, lay-off, discharge, retire, the determination of the number of employees, and making of operating rules is vested exclusively in the Company, provided that claim of discriminatory promotions or wrongful discharges shall be subject to the grievance procedure herein provided . . ."

That part of Paragraph 10 here pertinent reads:

"*Settlement of Disputes.* (*a*) Disputes and Grievances. Any grievance of any employee covered by the terms of this agreement and pertaining to promotion, lay-off, suspension, discharge or discrimination of any dispute which shall arise between the Association or its members and the Company with respect to the interpretation or application of any of the terms or provisions of this agreement during its term shall be determined by the procedure set forth in this section. No action or matter relating to promotion, demotion, discipline, lay-off, discharge or claim of preferential treatment shall be considered unless written grievance is submitted in accordance with this section within five (5) days from its occurrence.

"(*b*) Grievance Procedure. (1) Grievance in written detail shall be submitted first to the superintendent of the transportation department who shall accord the employee or association representative or both an opportunity for immediate hearing and shall make his written decision to the complainant within forty-eight (48) hours after complainant's case was presented to him. A bonafide effort will be made by both parties to settle all grievances at this level.

"(2) However, if the grievance is not settled with the department head, the employee or Association representative may refer it to the President of the Company or his designated representative who shall give employee or Association representative or both an opportunity for hearing on the matter and make his decision within one (1) week after hearing the evidence submitted to him by the complainant.

"(*c*) Arbitration Procedure. (1) Any grievance or dispute arising under this agreement which is not satisfactorily adjusted in the manner provided in sub-paragraph (*b*) above shall be submitted to an arbitrator who shall be selected from a list of five (5) persons provided by the Federal Mediation and Conciliation Service, 2600 Federal Office Building, Kansas City 6, Missouri. The Association and the Company shall each strike two (2) names from said list and the person whose name remains shall be designated as the arbitrator.

"(2) . . . The Board shall have no power to change any of the provisions of this agreement, except those mutually agreed for arbitration."

On January 21, 1964, the Company granted the Union an immediate hearing on the Alumbaugh grievance filed on January 16, 1964, pursuant to Paragraph 10 (*b*) (1).

On January 23, 1964, Stephenson, on behalf of the Company, replied to the grievance, which reads in part:

"It is my opinion that your Grievance No. 1 (Alleged Discharge Without Justifiable Cause) and No. 2 (Alleged Discharge Without Furnishing Grounds) are not proper matters for consideration under the grievance procedure as outlined in the Agreement . . . It is my opinion that any grievance must

arise 'with respect to the interpretation or application of any of the terms or provisions of this agreement . . .' . . . Neither of these items are covered by the contract, except that management has reserved the exclusive right to determine matters of discharge."

Stephenson listed the reasons for Alumbaugh's discharge, in part, as follows:

"1. Refusal to cooperate with the company's insurance carrier in the processing of a liability claim . . . arising from an occurrence on a bus which you were driving. . . . on one occasion you failed and refused to appear at the company's claim adjusting office after being requested, and on another occasion you refused to give a statement. We point out that this is an extremely serious matter . . .

"2. On one or more occasions you made certain damaging · admissions against the interest of this company. . . . you specifically volunteered the statement that claimant's injuries had been caused by defective equipment of the company.

"3. It is clear that on several occasions you gave false and incorrect information to the company relating to these matters.

"4. You failed to make an immediate report after the accident of the allegedly defective condition of the bus and continued to operate it with passengers."

. . . . . . . . . . . . . .

6. Your report of May 29, 1963, the date of the accident, shows your approval of the mechanical condition of the bus even though later alleging that it was defective.

"7. Upon examination of this bus following the injury to the customer, no mechanical defect could be found by Company mechanics and we can therefore only assume that the injury to the customer was caused by your negligence.

"8. Your attitude toward company management during this investigation and the processing of this claim against the company was most uncooperative and surly."

On June 18, 1964, the Union filed a petition praying that the district court order the Company to submit to arbitration. The Company answered and a pretrial conference was held on December 24, 1964. On April 30, 1965, the cause was tried by the district court. While Alumbaugh testified he had never been given any reasons for his discharge, the testimony of Lyle Spring, President of the Union, tended to support that of Moore to the effect that on January 13, 1964, Moore told Alumbaugh the reasons for his discharge, and further, told him those reasons would be left off the Separation Notice card prepared by the Kansas Employment Security Division for Alumbaugh's "betterment."

In a memorandum opinion dated July 9, 1965, the district court concluded that the agreement was not ambiguous; that the pro-

visions of Section I, Paragraph 10 (*a*) entitled "Settlement of Disputes," with respect to discharge, were applicable only when disputes arose with respect to interpretation or application of the terms and provisions of the agreement which is restrictive in its application, and which does not, nor was it intended to imply that management could not have the exclusive right to discharge employees, and that Alumbaugh's grievance that he was discharged without justifiable cause, was not an arbitrable dispute under the provisions of the agreement. The opinion made no finding as to whether Alumbaugh was told why he was discharged. Both parties filed motions for a new trial, which were overruled. On August 13, 1965, the Union filed a supplemental motion to amend the court's findings by making two additional findings, "that defendant employer either gave the employee, Ross W. Alumbaugh, no reason for his discharge, or, in the alternative, the Court should make a Finding of Fact of what particular reason was given the said employee for his discharge if the Court finds that a reason was given." The district court overruled the motion for supplemental findings, and rendered judgment denying the mandatory injunction.

The Union contends the terms of the agreement precluded the district court from adopting the view that the Company's right to discharge without cause was inviolate. It argues that if Alumbaugh was discharged and no reason was given, it has the right to file a grievance to learn the cause, and upon learning the cause, it then has the right to pursue the grievance procedure to contest its lawfulness pursuant to Paragraphs 4 and 10. It further contends the district court erred in concluding a discharge was subject to arbitration procedure only if the discharge violated the terms of the agreement, and argues that if this were true, the Company would still have to give an employee reasons to permit him to know whether the discharge violated the agreement; further, that a discharge without a reason cannot be distinguished from a layoff, and that Alumbaugh's separation was a "layoff" in violation of the agreement which requires that preference be given to employees with seniority. And lastly, that the district court should have made a determination of facts as requested in the Union's supplemental motion, and argues that once the district court makes a determination of facts upon which the evidence is in conflict, it has denied the employee the right to have the facts decided by arbitration.

The Company contends that the right to discharge is vested ex-

clusively in management, pointing out there is no clause which provides that it must discharge for cause, and refers to Paragraph 4, which states, ". . . the right to . . . discharge . . . is vested exclusive in the company . . ." and argues that such language, uninfluenced and untouched by legalisms, is commonly understood to mean that the Company reserved solely to itself its traditional right to discharge employees. It makes further reference to the proviso in Paragraph 4, which limits its right to discharge by the language, ". . . provided that claim of . . . wrongful discharges shall be subject to the grievance procedure herein provided . . ." and asserts that the words "wrongful discharges" must be construed and harmonized with Paragraph 10 (a), that,

". . . Any grievance of any employee . . . pertaining to . . . discharge . . . which shall arise between the Association or its members and the Company with respect to the interpretation of any of the terms or provisions of this agreement during its term shall be determined by the procedure set forth in this section. . . ."

It further argues that such language limits the grievance procedure and arbitration to disputes with respect to an interpretation or application of a provision or term in the agreement, and since there is no term or provision referring to discharge without cause, there can be no grievance or arbitration.

As preliminary, it is a settled rule of this jurisdiction that the construction of a contract is a question of law for the courts, and in construing a written contract, courts will resort to normal and usual rules of construction. The construction of a collective bargaining agreement is no different from any other contract, and the determination of what questions the parties have agreed to submit to arbitration is a function of the courts and not the arbiters, and courts will not infer that it was the intention of the parties to empower the arbiters to determine the extent of their own jurisdiction. (*Coleman v. Local No. 570*, 181 Kan. 969, 317 P. 2d 831.) In placing a construction on a written instrument, reasonable rather than unreasonable interpretations are favored by the law, and its meaning should be ascertained by a consideration of all of the pertinent provisions and never be determined by critical analysis of a single or isolated provision. (*Weiner v. Wilshire Oil Co.*, 192 Kan. 490, 389 P. 2d 803.) In short, the instrument is to be interpreted from its four corners and all of the language used should be taken into consideration.

The essence of a collective bargaining agreement is to provide terms and conditions of employment, and job security for employees. Grievance and arbitration is an important process worthy of judicial encouragement, and if the agreement contains ambiguous language susceptible of two or more interpretations, courts should lean to the one directed toward conferring a wide scope of jurisdiction to arbitration. The settlement of disputes between labor and management by fair and intelligent arbitration is favored by courts. Generally speaking, arbitration clauses are either "limited" to a specific type of dispute, or are of a "general" nature embracing "many" or "all" disputes, but disputes are not arbitrable which are frivolous, or where there is no "bona fide" dispute. An extensive annotation covering the subject "Collective Labor Contract-Arbitration" is found in 24 A. L. R. 2d, 752, where it is stated:

"In determining the arbitrability of a dispute between parties to a collective labor contract the main factor to be considered is the scope of the arbitration agreement contained therein." (p. 757.)

In *Lodge No. 12, Etc. v. Cameron Iron Works*, 257 F. 2d 467, cert. den. 358 U. S. 880, 3 L. Ed. 2d 110, 79 S. Ct. 120, it was said:

".  .  . We consider the general rule to be that a dispute between labor and management is arbitrable where the dispute is specifically contracted to be arbitrable or generally where the contract expresses a broad arbitration policy, *i. e.* a general arbitration clause; but controversies are not arbitrable where the controversy in question is specifically excluded, where because of a listing of many arbitrable incidences the instant controversy is impliedly excluded, and where the controversy or grievance concerns violation of a 'no strike clause.' " (p. 471.)

To determine whether Alumbaugh's grievance that he was discharged without cause is subject to arbitration, we look to the terms of the agreement, or working rules made pursuant thereto. During oral argument we were advised that working rules had been adopted, but were deemed not material to this appeal and were not included in the record. Turning to the agreement, it is observed that the provisions of Paragraph 4 vest the right to discharge exclusively in the Company, except that "claim of  .  .  . wrongful discharges" shall be subject to the grievance procedure, and if unresolved, to arbitration. Since the agreement vests the right to discharge exclusively in the Company, except for claim of "wrongful discharge," it follows that for a discharge to be subject to the grievance procedure in Paragraph 10, the discharge must be "wrongful." Thus, we are brought to the question: What was intended

by the words "wrongful discharges" as used in the agreement, and, specifically, is a discharge without cause a wrongful discharge, as contended by the Union?

Paragraph 10 relates to the settlement of disputes, and defines the scope of the grievance and arbitration provisions contained therein. Subparagraph (*a*) provides that *any grievance* of any employee *covered by the terms of the agreement* pertaining to *discharge* shall be determined by the grievance procedure when it relates "to the interpretation or application of any of the terms or provisions of this agreement."

The grievance procedure set forth in Paragraph 10 (*b*) is not an issue in this appeal, but provides that a detailed written grievance shall be submitted to the superintendent of transportation who shall accord the employee or the Union, or both, an immediate hearing and make his written decision within 48 hours thereafter. Subparagraph (*b*) (2) provides that if the grievance is not then resolved, the employee or the Union *may* refer it to the president who shall give the employee or the Union, or both, a hearing and make his decision in one week.

Paragraph 10 (*c*) details the arbitration procedure, and provides that "Any grievance or dispute *arising under this agreement* which is not satisfactorily adjusted in the manner provided in Subparagraph (*b*)" shall be submitted to arbitration. (Emphasis supplied.)

Basically, this case turns upon what the parties have agreed to, that is, the scope of the arbitration agreement. Giving consideration to all the provisions of the agreement, we are of the opinion that the words "wrongful discharges" as used in Paragraph 4 must be construed with Paragraph 10 (*a*) which expressly limits the scope of arbitration to disputes pertaining to discharges, when they relate "to the interpretation or application of any of the terms or provisions of this agreement," that is, for a discharge to be "wrongful" and therefore subject to arbitration, it must be in violation of a term or provision of the agreement. As indicated, the Union contends Alumbaugh was discharged without *cause,* but the words "wrongful discharges" say nothing of *cause,* and the Union fails to point to any term or provision which could be interpreted as requiring that a discharge must be for *cause,* or which requires the Company to "justify" or give "reasons" for a discharge. The result is, since the agreement vests the right to discharge exclusively in the Company, and finding no basis in the agreement for saying

that the Union's claim that Alumbaugh's discharge for cause and without reason was a "wrongful discharge" in violation of some specific term or provision, we are required to conclude the grievance was not arbitrable, and the appellant is not entitled to a mandatory injunction to compel arbitration.

This is not to say that Alumbaugh did not have the right to file a grievance with the superintendent of transportation alleging he was discharged without cause. But it does not follow that because of the unresolved grievance, arbitration is the prescribed result. The two procedures are not co-extensive. Moreover, our examination of the record compels us to conclude the evidence introduced in the district court, both oral and written, including Stephenson's letter of January 23, 1964, fairly indicates that Alumbaugh was given reasons for his discharge at the time his services were terminated on January 13, 1964, and later by the superintendent of transportation.

The contention that Alumbaugh's discharge was a layoff is without substance. No facts were presented which would indicate the company was laying off employees because of lack of work or for any other reason, nor did Alumbaugh make any such assertion in the official declaration of grievance.

The Union's contention the district court erred in its conclusion that "Settlement of Disputes" with respect to discharge lies only when disputes arise between the Association and the Company, is correct if the district court meant that a dispute could not exist between an employee, individually, and the Company. The language of Paragraph 10 (a) stating, "which shall arise between the Association *or its members* and the Company" (emphasis supplied), includes the grievance of the individual employee as well as that of the group as a whole.

In conclusion, we feel compelled to say the agreement contemplates that reasons for a discharge will be given an employee, if not simultaneous with the discharge, at least in the course of grievance procedure. This is not to say, however, that arbitration is the end result of an unresolved grievance. In determining whether a discharge is "wrongful" and therefore subject to arbitration, we look to the terms and provisions of the agreement, or working rules made pursuant thereto, to ascertain whether the discharge was in contravention of the agreement.

The judgment is affirmed.