433 F.2d 629
 The GOODYEAR TIRE & RUBBER COMPANY, a corporation, Plaintiff-Appellee,
v.
Mrs. E. A. JONES, also known as Fern L. Jones, d/b/a Jones Electric Machinery Company, Universal Surety Company, a corporation, United States of America, the Topeka State Bank, et al., Defendants-Appellees,
Bruce Walters and Duane Post, Defendants-Appellants.
 No. 111-68.
 United States Court of Appeals, Tenth Circuit.
 October 9, 1970.
 Rehearing Denied December 23, 1970.
 Second Rehearing Denied February 16, 1971.
 
 B. L. Pringle, Topeka, Kan., for appellants.
 Donald Patterson, Topeka, Kan. (David H. Fisher, C. K. Sayler, Jack L. Summers, Edwin Dudley Smith and Jerry R. Palmer, Topeka, Kan., on the brief), for appellees.
 O. F. Baldwin, Topeka, Kan., for appellee The State of Kansas.
 Before FAHY, Senior Circuit Judge,* and HILL and HOLLOWAY, Circuit Judges.
 HOLLOWAY, Circuit Judge.
 
 
 1
 The Memorandum of Decision entered by the District Court, 317 F.Supp. 1285, and its subsequent rulings and judgment held: (1) that appellants Walters and Post were not entitled to a labor lien for $5,500 lump sums payable to each of them at the end of a construction project; (2) that they were not entitled to recover such sums on a payment bond covering the work of their employer; and (3) that they were not entitled to summary judgment against their employer for other wages and a lien therefor on the interpleaded fund. We affirm the rulings of the District Court on Kansas law as to issues (1) and (2), on which a final judgment was entered under Rule 54. For reasons stated below we conclude that issue (3) is not properly before us and do not reach it.
 
 
 2
 We conclude that the facts are not in material dispute and that summary judgments were proper on issues (1) and (2). The controversy turns largely on the Kansas labor lien statute, the payment bond of the employer and the surety-appellee Universal, and the written agreement for the $5,500 payments and the circumstances surrounding it, which are not in material dispute. Detailed facts concerning the controversy and the interpleader action giving rise to this appeal are stated in the District Court's Memorandum and are not repeated. The principal facts sufficient for discussion of the contentions on appeal follow.
 
 
 3
 Appellee Jones Electric Machinery Company was awarded a contract in 1966 for work on an expansion project for Goodyear at its Topeka plant. The Jones work force included appellants Walters and Post, who were foremen and electricians and members of the International Brotherhood of Electrical Workers Union. They told Jones that there had been abuses and threats by the union and prepared to leave the job. Jones discussed terms under which they would stay on the job until the end of the project. The upshot of the discussions was a written agreement providing for a lump sum payment of $5,500 to each of them, described as "an additional wage," provided they would continue their employment to the end of the project.[1] Without this agreement, they would not have worked on.
 
 
 4
 About a year later when the project was completed, the lump sum payments were not made and lien claims were filed by Walters and Post, whose procedural regularity is not challenged. The enforcement of the lien claims was sought by Walters and Post by answers and counterclaims in the interpleader action.
 
 
 5
 First, appellants Walters and Post argue that the District Court erred in rejecting their claims under the Kansas statutes providing for liens and priorities for labor and material, K.S.A. 1969 Supp. 60-1101 and 1103.[2] As appellants point out, the agreement described the payments as "an additional wage." However, the undisputed facts showed that a basic wage rate had been agreed on with Walters and Post, and that the $5,500 payments were separately promised to be payable at the end of the project, which was a year later. Moreover, as the District Court pointed out, the lien principle rests in a sense on unjust enrichment based on the value resulting from work. See Adair v. Transcontinental Oil Co., 184 Kan. 454, 464, 338 P.2d 79, 87. The idea furnishes a reasonable basis for holding the lump sum payments not to come within the lien statute. And as the District Court also mentioned, the Kansas laws are strictly construed in determining the items for which the statute gives a lien. Bridgeport Machinery Co. v. McKnab, 136 Kan. 781, 786, 18 P.2d 186, 188; Potter v. Conley, 83 Kan. 676, 112 P. 608. It was concluded that the $5,500 lien claims were not "* * * within the provisions and purposes of the lien law as construed and interpreted by the Kansas courts."
 
 
 6
 We find no Kansas decision on similar circumstances. In applying the State law to the facts, we cannot say that the ruling under the lien statute was clearly erroneous, and accept it as a reasonable interpretation of Kansas law. In such circumstances this Court does not disturb the interpretations by the District Court on the law of its State. Brunswick Corporation v. J & P, Inc., 424 F.2d 100 (10th Cir); Teague v. Grand River Dam Authority, 425 F.2d 130 (10th Cir.); Parsons v. Amerada Hess Corporation, et al., 422 F.2d 610 (10th Cir.); Fulton v. Coppco, Inc., 407 F.2d 611 (10th Cir.).
 
 
 7
 Secondly, appellants Walters and Post contend that they were entitled to recover on the payment bond of their employer and the surety, Universal. The obligation of the bond was for payment "* * * for all labor and material used or reasonably required for use in the performance of the contract * * *"[3] Again the question of State law is whether the lump sum payments were for labor within the meaning of the bond, or were a separate consideration based on other circumstances. Appellants point to the general rule, followed also in Kansas, construing such instruments against the party drawing them.
 
 
 8
 We again find no controlling Kansas decision. The District Court's ruling points out that the Goodyear-Jones contract is incorporated by reference in the bond, and that the surety had a right to look to the contract as to the labor and materials used or reasonably required for use in the performance of the contract. There is a reasonable basis for the conclusion, as a matter of Kansas law, that the claims were not for labor in the sense used by the parties. We cannot say that the ruling was clearly erroneous and accept it under our rule cited above.
 
 
 9
 Lastly, appellants argue that the District Court erred in denying summary judgment on their claims against appellee Jones for wages earned by them after the project was completed,[4] and for a lien therefor on the interpleaded fund. However, the only ruling on the issue was denial of a motion for summary judgment for such relief. The District Court stated that facts before the Court at that point did not permit granting so extensive a judgment. There is no appealable judgment that denied the relief sought, for this the District Court did not do. Since the ruling only denying summary judgment is not appealable, Heron v. City and County of Denver, 317 F.2d 309 (10th Cir.); Alart Associates, Inc. v. Aptaker, 402 F.2d 779 (2d Cir.), we conclude that the third issue is not properly before us. The final judgment entered did not decide issue (3), and disposed of and directed entry of final judgment under Rule 54 (b) only on issues (1) and (2), which rulings we affirm.
 
 
 10
 Affirmed.
 
 
 
 Notes:
 
 
 *
 Of the District of Columbia Circuit, sitting by designation
 
 
 [1]
 The written agreement read as follows:
 "TO THOSE CONCERNED:
 "WHEREAS, my two first foremen on the Goodyear job, Bruce Walters and Duane Post, are experiencing a great deal of difficulty with their Union because of this foremanship, and
 "WHEREAS they are under enormous pressure to desert me and find employment elsewhere, and
 "WHEREAS, their presence is an absolute essential to the project's completion and these two men by their continued loyalty to me are seriously jeopardized in future employment opportunities, I do now on this twentieth day of September, Nineteen Hundred Sixty-six (Sep. 20, 1966) promise and contract to pay upon this job's completion an additional wage in the amount of Fifty-five Hundred Dollars ($5500.00) EACH to Duane Post and Bruce Walters, PROVIDED, that they have continued in my employment to the end of the project.
 "/s/ Ralph Jones"
 
 
 [2]
 The Kansas statutes for labor and material provide in pertinent part for liens and priorities in K.S.A.1969 Supp. 60-1101 and 1103:
 "60-1101. Liens and priorities. Any person furnishing labor, equipment, material, or supplies used or consumed for the improvement of real property, under a contract with the owner or with the trustee, agent or spouse of the owner, shall have a lien upon the property for the labor, equipment, material or supplies furnished, and for the cost of transporting the same, and the lien shall be preferred to all other liens or encumbrances which are subsequent to the commencement of the furnishing of such labor, equipment, material or supplies. When two or more such contracts are entered into applicable to the same improvement, the liens of all claimants shall be similarly preferred to the date of the earliest lien of any of them."
 "60-1103. Liens of subcontractors and others. (a) Procedure. Any subcontractor or other person furnishing labor, equipment, material or supplies, used or consumed at the site of the property subject to the lien, under an agreement with the contractor, or a subcontractor of the contractor, may obtain a lien for the amount due in the same manner and to the same extent as the original contractor * * *."
 
 
 [3]
 The condition of the bond by Jones and appellee Universal Surety Company provided as follows:
 "NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that if the Principal shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the Contract, then this obligation shall be void; otherwise it shall remain in full force and effect, subject, however, to the following conditions: * * *"
 
 
 [4]
 Appellants Walters and Post point out that Jones admitted by deposition that such work was done at agreed rates and not paid for
 
 
 
 11
 FAHY, Senior Circuit Judge.
 
 
 12
 I concur. The Tenth Circuit cases cited by Judge Holloway admonish us that we are not to depart from the District Court's construction of the Kansas statute unless it is clearly erroneous, and this cannot be said to be the situation in this case. Even were the rule governing our review less confining where the question is one of law — which I might well conclude were I free to do so — I think we should uphold the District Court's construction of the Kansas lien statute as applied to the facts of this case.[1] agree also that the bond here is to be construed to give no broader coverage than the lien statute itself.
 
 
 
 Notes:
 
 
 [1]
 In addition to the facts mentioned by Judge Holloway bearing upon the question whether the extra payments agreed to be made by Jones to appellants were wages for labor within the meaning of the lien statute, I note that the payments referred to were not part of the formula by which the contract price assumed by Goodyear was calculated, and Goodyear was not billed by Jones for these payments
 
 
 
 13
 HILL, Circuit Judge (dissenting).
 
 
 14
 I cannot agree with the majority that these lien claims are excluded by the provisions and purposes of the Kansas lien law "as construed and interpreted by the Kansas courts." I find no support for the decision in the statutes, cases or underlying policy, and accordingly deem the lower court's decision clearly erroneous.
 
 
 15
 Prior to September, 1966, Goodyear had advertised for bids on the expansion project at their Topeka, Kansas plant. Mrs. E. A. Jones, d/b/a Jones Electric Machinery Company, submitted a bid on the electrical work required on the addition. The Jones bid was accepted by Goodyear on September 13, 1966, and Jones was requested to commence work immediately. Jones Electric was managed by Mr. Ralph Jones, son of Mrs. E. A. Jones, who complied with the Goodyear request and began work within a week. The labor force hired by Mr. Jones included Duane Post, a prior employee of Jones, and Bruce Walters, a new employee, both of whom were journeymen electricians and members of the International Brotherhood of Electrical Workers. Between September 13 and 20, both of these electricians were allegedly subjected to abuses by their union, all aimed at prompting their separation from the Goodyear job. Apparently the threats took their toll and on the 20th Walters and Post approached Ralph Jones, advised him of their state of affairs, and prepared to walk off the job.
 
 
 16
 Exactly what took place during the remainder of that meeting is uncertain but the parties all agree that the result was an agreement, signed by Ralph Jones as managing agent for Jones Electric Company to pay these two men an "additional wage" to remain as foremen until the completion of the job. The agreement is the heart of this lawsuit.[1] After the agreement was signed, Walters and Post returned to the Goodyear job as Jones' foremen and drew their regular minimum union wage until the job was completed.
 
 
 17
 It is further agreed that on March 10, 1967, Universal executed and delivered a labor and materials payment bond, in which Jones was principal and Goodyear was obligee. Sometime subsequent to completion of the Goodyear job, it became apparent that Jones Electric was in financial difficulties so that Goodyear requested affidavits, as contractually required, indicating that no right to a lien existed in favor of specified persons, before the remaining $52,661.04 due was paid. Jones failed and refused to comply with this request and Goodyear promptly filed this interpleader action, depositing the amount due with the registry of the District Court to protect itself from the many claims being asserted against it by Jones' creditors.
 
 
 18
 Subsequently Post and Walters filed an answer and cross-complaint alleging in substance the existence of their agreement with Jones; that it had not been paid when due; that they had filed a lien pursuant to Kansas law and alleged a superior claim to all others. Count II of the cross-claim alleges that wages are due them from Jones for work done after completion of the Goodyear job and prays for judgment in that amount and a lien on the interpleaded sum.
 
 
 19
 All parties agree that the validity of appellants' claims turn on whether the money is viewed as payment for labor and lienable under Kansas law, or, as contended by appellees, whether the money was a premium Jones paid for the right to select his own foremen and for appellants to assume the risks of their union's reprisals.
 
 
 20
 K.S.A. 60-1103 declares that any person furnishing labor used at the site of the property subject to the lien, under agreement with a contractor or subcontractor, may obtain a lien for the amount due. The interpretation given to this statute and its predecessors has always been one of strict construction,[2] requiring compliance with the statute, with no consideration to equity in the initial proceedings.[3] Notwithstanding, once the claim is within the lien statute, it is to be liberally construed.[4] I believe this to be the posture of the case before us.
 
 
 21
 In denying relief to cross-claimants, the trial court limited its interpretation of "labor" as used in the lien statute, to "manual labor."[5] This is plainly too restrictive in a statute which has as its purpose the protection of wage earners furnishing services to the owner or its contractor.[6] Although there is a lack of complete harmony among the jurisdictions, the decided weight of authority accords with the rule which allows the enforcement of a lien claim for supervising the construction of a building or improvements.[7] Numerous decisions now recognize that "labor" is more inclusive than the phrase "manual labor" would indicate, and is broad enough to include mental or physical toil, bodily or intellectual exertion.[8] Had an architect been engaged to render his services in the construction of this project, he would from all appearances, be entitled to a lien,[9] even though such services are not manual labor. The electrical work here was performed by union labor, and in this situation, the union required two foremen who were not permitted to use the tools of their trade and whose duties were supervisory. They are required to plan and lay out the work of electricians on the job and to oversee the work of their crew. The owners here knew that union labor would be employed and, resultingly, that foremen would be required. In such a situation the services of Walters and Post ought to be lienable items within the contemplation of the Goodyear contract and the lien statute.
 
 
 22
 The trial court concluded that the promise to pay additional wages was not intended to be for labor, but that it was intended to be inducement to Walters and Post to endure loss of favor with their union. It is the aim of courts in interpreting a written contract to give effect to the mutual intention of the parties as it existed at the time of the execution of the contract.[10] In construing a written contract, the meaning of the instrument should be ascertained by considering all the pertinent provisions and never be determined by critical analysis of a single or isolated provision.[11] In short, the instrument is to be interpreted from its four corners and all language employed must be taken into consideration.[12]
 
 
 23
 The instrument recites that the presence of Walters and Post was "absolutely essential to the project's completion," whereupon Jones contracted to pay an "additional wage" upon the job's completion. The ordinary use of this term indicates "compensation given to a hired person for his services."[13] [emphasis added] Had the parties meant this to be for other than labor as the lien statute required, they could have so indicated by using the term bonus, etc. These men were paid for labor, not from philanthropy, and the "additional wage" was to supplement their union wage.
 
 
 24
 Appellants readily admit that the additional wage persuaded them to remain in the service of Jones. When they approached Mr. Jones with the threats they had received, and their conviction for quitting the Goodyear job was manifest, their services were obviously worth an increased wage to Jones. To insure meeting the contractual demands with Goodyear, Jones was willing to increase their remuneration in the amount of $5500 each. This was not a gift, but a realization on the part of Jones that because of the circumstances enumerated in the whereas clauses of the instrument, the value of the services provided by the two men was increased. With payment due under the contract with Goodyear at completion of the project, it certainly cannot be considered unusual or indicative of a bonus to postpone payment until that date. Indeed it seems that such is not an unusual practice.[14]
 
 
 25
 By deciding that the wages due under the contract are lienable items, and in view of Universal's admission that the bond protected against such liens, it follows that the surety would be liable on its bond for the $11,000 plus interest, pursuant to K.S.A. 16-201.
 
 
 26
 Appellants' final argument appears to be but an attempt to appeal from a denial of a motion for summary judgment, and I would concur with the majority's disposition of that point.
 
 
 
 Notes:
 
 
 [1]
 
 "September 20, 1966
 TO THOSE CONCERNED:
 WHEREAS, my first two foremen on the Goodyear job, Bruce Walters and Duane Post, are experiencing a great deal of difficulty with their Union because of this foremanship, and
 WHEREAS, their presence is an absolute essential to the project's completion and these two men by their continued loyalty to me, are seriously jeopardized in future employment opportunities, I do now on this twentieth day of September, Nineteen Hundred Sixty-Six (Sept. 20, 1966) promise and contract to pay upon this job's completion an additional wage in the amount of Fifty-Five Hundred Dollars ($5500) EACH to Duane Post and Bruce Walters, PROVIDED, that they have continued in my employment to the end of the project.
 /s/ Ralph Jones."
 
 
 [2]
 E. g. Potter v. Conley, 83 Kan. 676, 112 P. 608, 609 (1911); Bridgeport Mach. Co. v. McKnab, 136 Kan. 781, 18 P.2d 186, 188 (1933).
 
 
 [3]
 Clark Lumber Co. v. Passig, 184 Kan. 667, 339 P.2d 280 (1959); Ekstrom United Supply Co. v. Ash Grove Lime & P. C. Co., 194 Kan. 634, 400 P.2d 707 (1965)
 
 
 [4]
 Bridgeport Mach. Co. v. McKnab, 136 Kan. 781, 18 P.2d 186, at 188
 
 
 [5]
 Union Traction Co. v. Kansas Cas. and Surety Co., 112 Kan. 774, 213 P. 169 (1923)
 
 
 [6]
 Toler v. Satterthwaite, 200 Kan. 103, 434 P.2d 814 (1967)
 
 
 [7]
 See cases cited in 60 A.L.R. Anno. 1257, 1274-78; 36 Am.Jur. Mechanics' Liens § 55
 
 
 [8]
 51 C.J.S. Labor, p. 544
 
 
 [9]
 General Air Conditioning Corp. v. Stuewe, 156 Kan. 182, 131 P.2d 638 (1942)
 
 
 [10]
 Pacific Portland Cement Co. v. Food Mach. & Chem. Corp., 178 F.2d 541 (9th Cir. 1949)
 
 
 [11]
 Weiner v. Wilshire Oil Company, 192 Kan. 490, 389 P.2d 803, 808 (1964)
 
 
 [12]
 Division No. 1360, Etc. v. Topeka Transportation Co., 200 Kan. 29, 434 P.2d 850, 855-56 (1967)
 
 
 [13]
 Black's Law Dictionary, Fourth Edition, p. 1750
 
 
 [14]
 Alabama Power Co. v. Federal Power Commission, 134 F.2d 602 (5th Cir. 1943)